[Crim. No. 471.   Fifth Dist.   June 25, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. JUANITA JOY STANSBURY, Defendant and Respondent.

Thomas C. Lynch, Attorney General, Edsel W. Haws and John Fourt, Deputy Attorneys General, for Plaintiff and Appellant.

Silveira, Garrett, Goul & Curry and Ben Curry for Defendant and Respondent.

CONLEY, P. J.—After closing hours, in their Mariposa bar called the Capitol Club, Juanita Joy Stansbury killed her husband, Phillip Stansbury; she shot him twice with a .22 caliber pistol and when he was stretched out on the floor, incapacitated and quite possibly already dead, she shot him seven times more. When the deputy sheriff came to arrest her, she said, "Scotty, I have done something bad. . . . I shot him." And when the officer expressed the belief that her husband was dead she stated, "Well, I hope that son-of-a-bitch is dead, because I told him if he ever hit me again, I'd kill him." She was given a preliminary examination in the Justice Court of Mariposa Judicial District; after hearing the evidence, the justice of the peace found that the offense of murder had been committed and that there was sufficient cause to believe Juanita Joy Stansbury guilty thereof; he ordered that she be held to answer, releasing her, however, on her own recognizance, pending proceedings in the superior court.

In the superior court, the trial judge took the position, under section 995 of the Penal Code, that the defendant had been committed without reasonable or probable cause; at the

same time the court directed that the district attorney file an amendment to the People's pleading, or a new information, charging the defendant only with manslaughter. The People appealed contending that the order of the magistrate finding that murder had been committed and that there was reasonable ground to believe the defendant guilty thereof was justified by the record.

Murder is the unlawful killing of a human being with malice aforethought. (Pen. Code, § 187.)

''All murder which is perpetrated by means of . . . wilful, deliberate, and premeditated killing . . . is murder of the first degree.'' (Pen. Code, § 189.)

■ Evidence of the circumstances existing at the time of the homicide as well as applicable facts before and after the killing are competent to show deliberation and premeditation. (*People* v. *Lookadoo,* 66 Cal.2d 307, 315 [57 Cal.Rptr. 608, 425 P.2d 208] ; *People* v. *Sears,* 62 Cal.2d 737, 743 [44 Cal. Rptr. 330, 401 P.2d 938].) Those murders which are not specified as first degree murders are considered murders of the second degree. (Pen. Code, § 189.) ■ Proof of malice without the further proof that the homicide was wilful, deliberate and premeditated would establish second degree murder rather than first degree murder. (*People* v. *Holt,* 25 Cal.2d 59, 70 [153 P.2d 21].)

The classic method of trial of a murder charge is this : the decision of the jurors, the 12 finders of fact from the community, should be received to determine whether the killing is murder of the first degree with or without capital punishment, murder of the second degree, or manslaughter, and, in a proper case, whether if self-defense or other legal excuse is urged it has been established and that the defendant should be acquitted. In the present case, the Attorney General contends that there is ample evidence which, if believed and not offset by other pertinent considerations in the record, would establish the existence of murder. Obviously, the court's order in the premises is not a trial verdict. The question to be determined by us is whether or not the superior court was justified in holding that there was no substantial evidence which, if believed, could result in a verdict of murder. Putting it otherwise in practical terms : was there evidence from which malice could be adjudged?

■ It must be kept in mind that the test at this point is not identical with that which controls a jury in trying a murder case. The jury must be convinced to a moral certainty

and beyond a reasonable doubt of the existence of the crime charged in the information and of each and every essential element of the crime. But a magistrate conducting a preliminary examination must be convinced of only ". . . such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused." (*People* v. *Nagle*, 25 Cal.2d 216, 222 [153 P.2d 344].) See also: *Bompensiero* v. *Superior Court*, 44 Cal.2d 178, 183-184 [281 P.2d 250]; *Lorenson* v. *Superior Court*, 35 Cal.2d 49, 55 [216 P.2d 859]; *People* v. *Willmirth*, 247 Cal.App.2d 513 [55 Cal.Rptr. 678]; *Brown* v. *Superior Court*, 234 Cal.App.2d 628, 633 [44 Cal. Rptr. 519].) ▉▉ If the evidence before the justice of the peace acting as committing magistrate is conflicting and hence gives rise to different inferences, the magistrate's conclusion must prevail over that of the superior court, as the latter court only reviews the transcript of the preliminary examination. (*People* v. *Magidson*, 232 Cal.App.2d 1, 3 [42 Cal.Rptr. 408].) And it is not the province of a trial judge to weigh the evidence on a motion to set aside an information. (*People* v. *Perry*, 216 Cal.App.2d 8, 10 [30 Cal.Rptr. 788].) ▉▉ The record discloses the fact that there was substantial evidence to support the order made by the committing magistrate requiring respondent to stand trial on a murder charge. Mr. and Mrs. Stansbury operated a bar in Mariposa named the Capitol Club; on the day of the killing they were in the bar after closing time with one of the bartenders, who was then off duty; Phillip Stansbury was attempting to add up the bar income for the day; the defendant was having a cup of coffee; Stansbury remarked that he had gotten four different answers from his addition, and the defendant had a still different total. The bartender offered to add the column, and as he did so Mrs. Stansbury asserted that she did not see how the husband could read his own figures. The husband then struck her a backhanded blow across the face and shoulder, which knocked her backward. He then moved a few steps away from her. Defendant picked up a .22 caliber pistol, which had been secured by the decedent as a means of defending against robbery. He had placed the gun on the bar in the vicinity of the cash register.

Decedent said to his wife, "Put that God damned pistol down, you son-of-a-bitch," and started toward her. The bartender said she was obviously afraid. The deceased had a violent temper and he had frequently used severe language toward his wife in the presence of the bartender, who had

seen her with a black eye on numerous occasions. The husband was several feet from the defendant and proceeding toward her with a menacing tone of voice when she first fired the gun. She said to her husband, ''I've told you before that if you ever hit me again, I'd try to kill you.'' Two shots were fired, and after Stansbury fell to the floor Mrs. Stansbury, having moved very close to him, fired seven more shots at him. When the deputy sheriff arrived at the scene, he said that Mrs. Stansbury had been drinking and the sheriff later said she appeared to be hysterical at times and calm at times. While it is obvious that the superior court judge concluded that Mrs. Stansbury acted in the heat of passion and that the provocation was such that any reasonable person would have acted in an equally rash manner, this was arrogating to himself a function that was not proper in view of the evidence above cited that would support a conclusion that she acted maliciously and had been planning to kill him if he ever struck her again.

The question as to what crime, if any, within the ambit of murder was committed is for the jury to determine. It is our conclusion that the magistrate was within his rights in holding the defendant to answer for murder.

The order of the superior court is reversed. The superior court is directed to set aside the order in question and to make a new order denying the motion of the defendant to set aside the information pursuant to section 995 of the Penal Code.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied July 24, 1968, and respondent's petition for a hearing by the Supreme Court was denied August 21, 1968.