[Civ. No. 46791. First Dist., Div. Four. Oct. 24, 1979.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
CRAIG LAMONT REED, Real Party in Interest.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart, Thomas A. Brady and Laurence K. Sullivan, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

James C. Hooley, Public Defender, and Jay B. Gaskill, Assistant Public Defender, for Real Party in Interest.

**OPINION**

**RATTIGAN, J.**—Craig Lamont Reed, the real party in interest in this original proceeding, is awaiting trial in respondent court under an information charging him with the murder of Chearl Reed on April 14, 1978. The information was amended to include an additional charge that he committed the murder under some of the "special circumstances" defined in Penal Code section 190.2 and cited in other provisions of the death penalty law.[1]

Section 190.2 provides that a defendant so charged may be punished by death, or by life imprisonment without possibility of parole, if he is found guilty of murder in the first degree and if the special circumstance charge is found to be true. Real party (hereinafter defendant) may not be punished by death because he had not reached the age of 18 years on April 14, 1978, and section 190.5 provides that "the death pen-

---

[1]Statutory references are to the Penal Code except where expressly indicated otherwise. The term "death penalty law" refers to sections 190, 190.1, 190.2, 190.3, 190.4, and 190.5 as they appeared in chapter 1 of title 8 (commencing with § 187) when the homicide involved in this proceeding was committed on April 14, 1978, as alleged in the amended information. (See Stats. 1977, ch. 316, p. 1255.) Section 190.2 is quoted in fn. 4, *post.*

alty shall not be imposed upon any person who is under the age of 18 years at the time of the commission of the crime" which would otherwise warrant it.[2] Respondent court made an order striking the special circumstance charge for these reasons. The People challenged the order by commencing the present proceeding, in which they seek a writ of mandate requiring respondent court to vacate it.

The district attorney initially charged defendant with the murder in a petition filed against him in the juvenile court. In proceedings conducted on the petition pursuant to Welfare and Institutions Code section 707, the juvenile court found that he was under the age of 18 years when the alleged murder was committed but that he was "not a fit and proper subject to be dealt with under the juvenile court law." (See Welf. & Inst. Code, § 707, subds. (a), (b) (1).) He was consequently charged with the murder in a complaint filed against him, as an adult, pursuant to Welfare and Institutions Code section 707.1. At a preliminary examination conducted on the complaint before a magistrate, it was established by stipulation that he was under the age of 18 years when the alleged murder was committed.[3]

The magistrate held him to answer to the murder charge in respondent court. In an information filed accordingly, the district attorney again charged him with having murdered Chearl Reed on April 14, 1978. He was arraigned on the information and entered a plea of not guilty. The information was subsequently amended to add the special circumstance charge, which read in full as follows:

"Special Circumstance [¶] (Section 190.2(c) (4) Penal Code) [¶] The District Attorney...further charges that...[defendant]...was personally present and, with the intent to cause death, did physically aid and commit the act causing the death of Chearl Reed and that the

---

[2]The pertinent language of section 190.5 reads in full as follows: "(a) Notwithstanding any other provision of law, the death penalty shall not be imposed upon any person who is under the age of 18 years at the time of commission of the crime. The burden of proof as to the age of such person shall be upon the defendant."

[3]This narrative paraphrases undisputed allegations in the pleadings on which the issues in the present proceeding were joined. The documents supporting them do not include any part of the record made in the juvenile court proceedings, nor a transcript of defendant's preliminary examination, nor any authenticated entry showing his exact age. An unchallenged recital in one of them nevertheless indicates that he was born on November 14, 1960. He was accordingly 17 years and 5 months old when the alleged murder was committed on April 14, 1978, and he is 18 years of age at this time.

murder of CHEARL REED was willful, deliberate, premeditated and involved the infliction of torture."[4]

After he had been arraigned on the amended information, defendant demurred to the special circumstance charge and moved to strike it pursuant to section 995. Respondent court did not rule on the demurrer, but made an order granting the section 995 motion and striking the special circumstance charge from the amended information. The People challenged the order by petitioning this court for a writ of mandate as previously described.

We issued an alternative write of mandate and stayed further proceedings in respondent court. Defendant filed a return to the alternative writ in which he effectively joins issue on the three points identified in the discussion below. For the reasons there stated, the People prevail on all three points.

I

Defendant contends in his return that the People "should be barred from extraordinary relief by the doctrine of laches." This contention is derived from a 1979 chronology which is largely unsubstantiated in the return, or in the documentary record made with the petition, but which apparently went as follows:

The information was amended to include the special-circumstance allegation on February 20. At an unspecified point before or after that, defendant's trial was set to commence on May 15. His section 995 motion to strike the allegation was made on April 4 and granted on April 17. The People commenced the present proceeding by filing their petition in this court on May 4. Subsequent events required by this court resulted in the trial being delayed beyond the May 15 trial date. We formally stayed it, thereby delaying it further, on May 23.

---

[4]The district attorney thereby incorporated the effect of the following provisions of section 190.2: "The penalty for a defendant found guilty of murder in the first degree shall be *death or confinement in the state prison for life without possibility of parole* in any case in which one or more of the following special circumstances has been charged and specially found, in a proceeding under Section 190.4, to be true:...[¶] (c) The defendant was personally present during the commission of the act or acts causing death, and with intent to cause death physically aided or committed such act or acts causing death and any of the following additional circumstances exists:...[¶] (4) The murder was willful, deliberate, and premeditated, and involved the infliction of torture...." (Italics added.)

The only time lag wholly chargeable to the People in this sequence is the 17-day period between April 17 and May 4. The length of that period is justified by the content of their petition, which is extensive and detailed. Defendant has alleged prejudice, but demonstrates none. The asserted defense of laches is without merit. (See *People* v. *Superior Court (Duran)* 84 Cal.App.3d 480; 489 [148 Cal.Rptr. 698]. See also *People* v. *Drake* (1977) 19 Cal.3d 749, 758 [139 Cal.Rptr. 720, 566 P.2d 622] [citing *Scott* v. *Municipal Court* (1974) 40 Cal.App.3d 995 (115 Cal.Rptr. 620)].)

Defendant urged two grounds for his demurrer to the special circumstance charge and his section 995 motion to strike it. Respondent court did not specify either ground in its order striking the charge, but defendant urges both in support of the order. We discuss them, in sequence, as he argues them.

## II

The first ground rests on defendant's minority when the alleged murder was committed, which makes him immune from punishment by death as expressly provided in section 190.5. According to his interpretation of other provisions of the death penalty law, his minority also makes him immune from punishment by life imprisonment without possibility of parole if he is found guilty of first degree murder. On this premise, he argues that the special circumstance charge is barred because he is not subject to either of the alternative penalties provided in section 190.2 for first degree murder with special circumstances. (See fn. 4, *ante.*)

The parties agree that the fact of defendant's minority when the alleged murder was committed was established beyond dispute in the juvenile court proceedings and in the preaccusatory evidence received at his preliminary examination. This means that he bears no burden of proving the fact pursuant to section 190.5. (See fn. 2, *ante.*) It also means that his theory of its consequences raised a question of law which was properly to be resolved on his demurrer to the special circumstance charge. (§ 1004, subd. 1; *Owen* v. *Superior Court* (1979) 88 Cal. App.3d 757, 762, fn. 4 [152 Cal.Rptr. 88].) If his theory is correct, the charge was properly stricken on his section 995 motion because the preaccusatory evidence of his minority established that the charge was made against him "without reasonable or probable cause." (§ 995;

*Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 955 [153 Cal. Rptr. 720].) The charge would also have been stricken if the demurrer had been sustained. (Cf. *People* v. *Superior Court (Colbert)* (1978) 78 Cal.App.3d 1023, 1026 [144 Cal.Rptr. 599]; *Owen* v. *Superior Court, supra,* at p. 762.) Respondent court's failure to rule on the demurrer is accordingly of no significance: the validity of defendant's theory is before us on review of the section 995 order striking the charge.

No provision of the death penalty law expressly states that a minor who commits murder is immune from the penalty of life imprisonment without possibility of parole. Section 190 provides that first degree murder is punishable (1) by death, (2) by life imprisonment without possibility of parole, or (3) by life imprisonment *with* possibility of parole, and that the choice among the three alternatives "shall be determined as provided" in the next successive provisions of the death penalty law.[5]

For first degree murder *with special circumstances,* section 190.2 effectively limits the choice of penalties to the two alternatives of death and life imprisonment without possibility of parole. (See fn. 4, *ante; People* v. *Superior Court (Colbert), supra,* 78 Cal.App.3d 1023 at p. 1028.) Defendant claims immunity from the second alternative, by reason of his statutory immunity from the first one, on the authority of a passage in *Owen* v. *Superior Court, supra,* 88 Cal.App.3d 757, stating that "section 190 provides the sentence of life imprisonment without possibility of parole for those who are subject to the death penalty and for no one else." (*Id.,* at p. 760.)

The passage is inaccurate on its face because section 190 clearly does *not* limit punishment by life imprisonment without possibility of parole to "those who are subject to the death penalty." (See its text as quoted in fn. 5, *ante.*) Moreover, the *Owen* court resolved the actual controversy before it by holding that "a section 190.2 charge...is improper when

---

[5]Section 190 reads in full as follows: "Every person guilty of murder in the first degree shall suffer death, confinement in the state prison for life without possibility of parole, or confinement in the state prison for life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5." Read in contrast to the second alternative, the unqualified language of the third one ("confinement in the state prison for life") presumably means life imprisonment *with* possibility of parole. (See *People* v. *Superior Court (Colbert), supra,* 78 Cal.App.3d 1023 at p. 1028.)

there has been *no death.*" (88 Cal.App.3d at p. 760 [italics added].) This holding demonstrates that the decision is wholly distinguishable from the present case, where there has been a death. The *Owen* court expressly characterized the holding as dispositive of the "fundamental issue" (*ibid.*), which means that it is a principal *ratio decidendi* of the decision. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 676-677, pp. 4589-4591.) The passage purportedly interpreting section 190 is thus isolated to a distinguishable context, it was pure dictum in that context, and the *Owen* court labelled it as such before pronouncing it. (See 88 Cal.App.3d at p. 759.) For all these reasons, the passage does not support defendant's theory that his statutory immunity from the death penalty makes him immune from the alternative punishment of life imprisonment without possibility of parole.

He also contends in effect that he is immune from the alternative punishment on the grounds that it must be imposed at a separate penalty phase of his trial which section 190.1 does not permit because it requires "separate phases" of a murder trial only if the case is one "in which the death penalty may be imposed."[6] The thrust of this argument claims immunity from punishment by life imprisonment without possibility of parole on the premise that it may not be imposed *except* at a separate penalty phase which is impermissible in defendant's case because of his immunity from the death penalty. We agree that a separate penalty phase may not occur at his trial, but we conclude that he may be subject to the challenged punishment without it.

Section 190.1 requires "separate phases" of a murder trial at which "the death penalty may be imposed," but its subdivision (a) describes only the guilt phase. It also establishes that the functions of the trier of fact at that phase are (1) to determine guilt of murder and, if the defendant is found guilty of murder in the first degree, (2) to determine the truth of a special circumstance charged pursuant to section 190.2. The procedure to be followed in making the second determination at the guilt phase is prescribed in subdivision (a) of section 190.4.[7] The fourth paragraph of the subdivision provides that "there shall be a separate penalty hearing" if a special circumstance is found to be true after the

---

[6]Section 190.1 provides in pertinent part: "A case *in which the death penalty may be imposed* pursuant to this chapter shall be tried in *separate phases* as follows: [¶] (a) The defendant's guilt shall first be determined. If the trier of fact finds the defendant guilty of first degree murder, it shall *at the same time* determine the truth of all special circumstances charged as enumerated in Section 190.2. . . ." (Italics added.)

[7]Section 190.4, subdivision (a), thus identifies the "proceeding under Section 190.4"

defendant is found guilty of first degree murder. The quoted language thus identifies and mandates the so-called "penalty phase" which section 190.1 requires in prospect but does not describe.

Certain procedures to be followed at the penalty phase itself are spelled out in trailing provisions of section 190.4. (See fn. 7, *ante.*) Consistent with the penalty language of section 190.2, some of these provisions indicate that the alternative punishments which may be selected at the penalty phase are limited to (1) death and (2) life imprisonment without possibility of parole. (See § 190.4, subds. (b) and (e), quoted *ibid.*) This limitation is made abundantly clear by section 190.3, which refers to the penalty phase as "the proceedings on the question of penalty" and establishes that the choice between the two penalties shall be based on evidence showing "aggravation" in support of the death penalty and "mitigation" supporting punishment by life imprisonment without possibility of parole.[8]

---

to which reference is made in the forepart of section 190.2. (See fn. 4, *ante.*) The pertinent text of section 190.4 provides as follows (italics and bracketed paragraph numbers added):

"190.4. (a) [1] Whenever special circumstances as enumerated in Section 190.2 are alleged and the trier of fact finds the defendant guilty of first degree murder, the trier of fact shall also make a special finding on the truth of each alleged special circumstance. The determination of the truth of any or all of the special circumstances shall be made by the trier of fact on the evidence presented at the trial . . . .

"[4] If the trier of fact finds that any one or more of the special circumstances. . .is true, there shall be *a separate penalty hearing* . . . .

"(b) If defendant was convicted by the court sitting without a jury, the trier of fact *at the penalty hearing* shall be a jury unless a jury is waived by the defendant and the people, in which case the trier of fact shall be the court. . . [¶] If the trier of fact is a jury and has been unable to reach a unanimous verdict as to what the penalty shall be, the court shall dismiss the jury and impose a punishment of confinement in state prison for *life without possibility of parole.* . . .

"(e) In every case in which the trier of fact has returned a verdict or finding *imposing the death penalty,* the defendant shall be deemed to have made an application for modification of such verdict or finding pursuant to subdivision (7) of Section 1181. . . ."

[8]Section 190.3 provides in pertinent part: "If the defendant has been found guilty of murder in the first degree, and a special circumstance has been charged and found to be true,. . .the trier of fact shall determine whether the penalty shall be *death or life imprisonment without possibility of parole.* In *the proceedings on the question of penalty,* evidence may be presented by both the people and the defendant as to any matter *relevant* to aggravation, mitigation, and sentence . . . . [¶] In determining the penalty the trier of fact shall take into account any of the following factors *if relevant:*. . . [¶] (h) The age of the defendant at the time of the crime. . . [¶] After having heard and received all of the evidence, the trier of fact shall consider, take into account and be guided by the aggravating and mitigating circumstances referred to in this section, and shall determine whether the penalty shall be *death or life imprisonment without the possibility of parole.*' (Italics added.)

Where the two prerequisite findings described in section 190.2 are made at the guilt phase in the trial of an adult defendant accused of murder with special circumstances, they operate to expose him to the death penalty or to the single permissible alternative of punishment by life without possibility of parole. The selection between these limited alternatives is to be made at a separate penalty phase of his trial, which must follow because section 190.1 requires it by implication and section 190.4, subdivision (a), expressly requires it once the two section 190.2 findings are made at the guilt phase.

If both findings are made at defendant's trial, the result *cannot* be the death penalty because section 190.5 prohibits it by reason of his minority when the crime charged was committed. The result *must* be punishment by life imprisonment without possibility of parole because that is the sole alternative still commanded by section 190.2 and because it is not prohibited, on account of his minority, by section 190.5 or any other provision of the death penalty law. It must be imposed without his trial going to a penalty phase, despite the mandatory provision of section 190.4, subdivision (a), calling for that progression where both section 190.2 findings are made, for two reasons.

In the first place, the clear purpose of a penalty phase in the trial of a defendant found guilty of murder with special circumstances is to guarantee that the trier of fact will make an informed selection, between the limited alternatives of punishment by death or by life imprisonment without possibility of parole, on the basis of evidence which is extraneous to the issue of guilt but which may show "aggravation" in support of the extreme penalty or "mitigation" favoring the lesser alternative. (See § 190.3 [partly quoted in fn. 8, *ante*]; *People* v. *Terry* (1964) 61 Cal.2d 137, 142 et seq. [37 Cal.Rptr. 605, 390 P.2d 381]; 2 Witkin, Cal. Crimes (1963) §§ 1035-1036, pp. 980-982.)

There will be no occasion for this process if the two section 190.2 findings are made at defendant's trial because the extreme penalty may not be imposed, there could be no "aggravation" calling for it, and there will have been "mitigation" to the lesser alternative punishment by operation of law. Since there would consequently be no issues to be tried at a penalty phase, it would be utterly meaningless to undertake one. The mandatory provision of section 190.4, subdivision (a), cannot be interpreted to require one because language of a statute should not be given a literal meaning if doing so would result in absurd consequences

which the Legislature did not intend. (*People* v. *Barksdale* (1972) 8 Cal.3d 320, 334 [105 Cal.Rptr 1, 503 P. 2d 257]; *Piazza Properties, Ltd.* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 622, 633 [138 Cal.Rptr. 357].)

The second reason invokes the language of section 190.1 which restricts "separate phases" in a murder trial to cases "in which the death penalty may be imposed." (See fn. 6, *ante.*) The restriction cannot be given effect in defendant's case unless the mandatory provision of section 190.4, subdivision (a), is construed as not requiring a penalty phase if the section 190.2 findings are made at his trial. ▇ We give it that construction in keeping with the principle that proper interpretation of a statutory enactment requires "construing it as a whole and harmonizing its various parts." (*Erlich* v. *Municipal Court* (1961) 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334]; *Piazza Properties, Ltd.* v. *Department of Motor Vehicles, supra,* 71 Cal.App.3d 622 at p. 633.)

▇ Our interpretation of the death penalty law thus establishes that defendant is subject to punishment by life imprisonment without possibility of parole, despite his minority when the alleged murder was committed, if he is found guilty and if the special circumstance charge is found to be true. It also establishes that if both findings are made at his trial he is to be sentenced to that punishment without further proceedings on the question of penalty. Because his minority does not preclude the special circumstance charge for these reasons, the section 995 order striking it was erroneous and must be vacated.

## III

Urging the second ground of his demurrer and motion to strike, defendant contends that the special circumstance charge is barred in his prosecution because the portended punishment of life imprisonment without possibility of parole, if and when it is imposed on him as the penalty for first degree murder with special circumstances pursuant to section 190.2, will violate his federal constitutional rights by reason of his youth. (See fn. 3, *ante.*) Specifically, he claims prospective violations of the Eighth Amendment guaranty against cruel and unusual punishment and his Fourteenth Amendment rights to due process and equal protection of the law.

We do not reach the merits of these constitutional claims for several reasons. Because we have concluded that the order under review must be vacated on statutory grounds derived from our interpretation of the death penalty law, consideration of the related constitutional issues would be premature and inappropriate in this pretrial proceeding. (*People* v. *Superior Court (Colbert), supra,* 78 Cal.App.3d 1023 at p. 1026.) They have not been fully briefed, in part because the People initially took the position that they were not to be reviewed in the proceeding at all. (See *People* v. *Superior Court (Brodie)* (1975) 48 Cal.App. 3d 195, 201 [121 Cal.Rptr. 732].) They cannot adequately be considered without the records made in the juvenile court proceedings and at defendant's preliminary examination, no part of which has been made available with the petition or defendant's return. (See fn. 3, *ante.*)

The constitutional issues may again be raised on appeal from a final judgment of conviction. Defendant's prosecution is meanwhile to proceed subject to the special circumstance charge.

A peremptory writ of mandate will issue directing respondent court to vacate its order striking the special circumstance charge from the amended information and to enter orders denying the motion to strike and overruling the demurrer to the charge.

Caldecott, P. J., and Poché, J., concurred.

A petition for a rehearing was denied November 21, 1979, and the opinion was modified to read as printed above. The petition of the real party in interest for a hearing by the Supreme Court was denied December 20, 1979. Bird, C. J., Mosk, J., and Newman, J., were of the opinion that the petition should be granted.