[Civ. No. 5613. Fifth Dist. Dec. 9, 1980.]

JIMMY DOYLE ALLEN, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Simrin & Moloughney and Stanley Simrin for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Edmund D. McMurray, Deputy Attorneys General, for Real Party in Interest.

OPINION

**ZENOVICH, Acting P. J.**—Petitioner seeks a writ of prohibition and/or mandate directing the respondent court to strike the special circumstance allegation "that the murder...was especially heinous, atrocious, or cruel, manifesting exceptional depravity..." from the information.

Petitioner Jimmy Doyle Allen was charged with having committed two criminal offenses. The first count alleged that petitioner "did willfully, unlawfully, feloniously and with malice aforethought murder Jesus Lara, a human being, in violation of Section 187 of the Penal Code." It was further alleged that: (1) petitioner used a deadly and dangerous weapon (i.e., a knife) in the commission of the offense (Pen. Code, § 12022, subd. (b)); (2) the murder occurred while petitioner was engaged in the commission of a robbery (Pen. Code, §§ 211, 190.2, subd. (a)(17)(i)); and (3) the murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity (Pen. Code, § 190.2, subd. (a)(14)). The second count of the information alleged that petitioner committed robbery by taking a 1969 Ford automobile from the posses-

sion of Jesus Lara. It was further alleged that: (1) petitioner used a deadly and dangerous weapon (i.e., a knife) in the commission of the offense (Pen. Code, § 12022, subd. (b)); and (2) petitioner intentionally inflicted great bodily injury upon Lara in the commission of the offense (Pen. Code, § 12022.7).

Following arraignment and entry of a not guilty plea, petitioner withdrew his plea and thereafter filed a demurrer to the information. The grounds for the demurrer were: (1) the special circumstance allegation of Penal Code section 190.2, subdivision (a)(14), could not be filed in the absence of charging first degree murder; and.(2) the special circumstance allegation was unconstitutionally vague under due process requirements. Respondent court overruled the demurrer.[1]

This cause now comes to us from the Supreme Court after we summarily denied his initial petition.

Since this is a demurrer, there are no material facts to consider. Nonetheless, we note that the prosecution's original opposition papers reflected that Jesus Lara had been stabbed 30 times and that petitioner continued stabbing the victim "because it felt good."[2]

I

■ Petitioner initially contends that he must be specifically charged with commission of *first degree* murder before the prosecution can allege the special circumstance contained in Penal Code section 190.2, subdivision (a)(14)[3] We are not persuaded.

---

[1] In a minute order, the respondent court reasoned: "The People need only allege the offense in the statutory language. Such an allegation was approved in PEOPLE V. ROMO, 47 CA3 976, 989, headnote 10. Accordingly, the demurrer on that ground is overruled.

"Counsel for the People is correct in alleging that Penal Code Section 190.2 presupposes that the defendant must be found guilty of First Degree Murder for the special circumstance alleged to be even considered by the jury.

"In view of the fact that the U.S. Supreme Court did not find fault with the challenged descriptive adjectives, heinous, atrocious and cruel in PROF[F]ITT V. FLORIDA, 428 US 242, this Court could hardly do otherwise than find that they adequately advise the defendant of the special circumstances with which he is charged.

"Accordingly, the demurrer is overruled and the defendant is Ordered to plead to the charges including the special circumstances alleged."

[2] The prosecution stated that such information was derived from evidence adduced at the preliminary examination.

[3] Penal Code section 190.2, subdivision (a)(14), provides: "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found un-

■ It is well established that, in charging a crime divided into degrees, it is unnecessary to state the method or degree of murder. (*People* v. *Risenhoover* (1968) 70 Cal.2d 39, 50 [73 Cal.Rptr. 533, 447 P.2d 925], cert. den. (1969) 396 U.S. 857 [24 L.Ed.2d 108, 90 S.Ct. 103]; *People* v. *Romo* (1975) 47 Cal.App.3d 976, 989 [121 Cal.Rptr. 684], disapproved on another point in *People* v. *Bolton* (1979) 23 Cal.3d 208, 213-214 [152 Cal.Rptr. 141, 589 P.2d 396]; *People* v. *Hamilton* (1969) 2 Cal.App.3d 596, 606 [82 Cal.Rptr. 700]; cf. Witkin, Cal. Criminal Procedure (1963) Proceedings Before Trial, § 200, p. 189.) The present indictment for murder charges all offenses necessarily included in the crime of murder, including voluntary and involuntary manslaughter. (*People* v. *Heffington* (1973) 32 Cal.App.3d 1, 11 [107 Cal.Rptr. 859].) The question as to what crime, within the ambit of murder, was committed is one for the jury. (See *People* v. *Stansbury* (1968) 263 Cal.App.2d 499, 503 [69 Cal.Rptr. 827]; *People* v. *Coston* (1948) 84 Cal.App.2d 645, 648 [191 P.2d 521].) ■ Furthermore, in capital cases, the jury initially decides the degree of murder and, if first degree is found, then determines whether the offense was attended by one of several special circumstances. Section 190.2 merely requires a *conviction of first degree murder*[4] as a prerequisite to application of the special circumstance allegation. There is no requirement that the information allege first degree murder; only a conviction is required. We therefore conclude that there was no infirmity with merely charging petitioner with murder.

Petitioner's reliance on *Owen* v. *Superior Court* (1979) 88 Cal.App. 3d 757 [152 Cal.Rptr. 88] is misplaced. *Owen* merely decided that special circumstance allegations may not be charged "when there has been no death" and the information only charged the defendant with conspiracy to commit a murder. (*Id.*, at pp. 760-762.) Since a death was alleged in the present information, *Owen* requires no specific allegation so far as degree of crime is concerned.

der Section 190.4, to be true:... The murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity, as utilized in this section, the phrase especially heinous, atrocious or cruel manifesting exceptional depravity means a conscienceless, or pitiless crime which is unnecessarily torturous to the victim."

Unless otherwise indicated, all code references are to the Penal Code.

[4]Section 190.2, subdivision (a), specifies: "The penalty for a defendant *found guilty of murder in the first degree* shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found... to be true...." (Italics added.)

█ Petitioner then contends that evidence of special circumstances will be introduced at the guilty phase and thereby prejudice the jurors' determination of degree of murder. Specifically, he contends that the prosecution might attempt to prove the special circumstance by introducing such prejudicial evidence as extremely bloody pictures which depict dismemberment of the victim and the amount of pain that the victim might have suffered. We are not persuaded for the following reasons.

Gruesome photographs are relevant as circumstantial evidence of malice or degree of crime, as showing the circumstances of the murder, or as an aid to the autopsy surgeon in explaining the position of wounds. (See *People* v. *Jackson* (1980) 28 Cal.3d 264, 302-303 [168 .Cal.Rptr. 603, 618 P.2d 149]; *People* v. *Cruz* (1980) 26 Cal.3d 233, 253 [162 Cal.Rptr. 1, 605 P.2d 830]; *People* v. *Salas* (1972) 7 Cal.3d 812, 819 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832], cert. den. (1973) 410 U.S. 939 [35 L.Ed.2d 605, 93 S.Ct. 1401]; *People* v. *Hawkins* (1978) 76 Cal.App.3d 714, 720 [143 Cal.Rptr. 106]; *People* v. *Jentry* (1977) 69 Cal.App.3d 615, 627 [138 Cal.Rptr. 250].) Moreover, petitioner was also charged with having committed a robbery and alleged to have inflicted great bodily injury upon the victim. Both these considerations show that evidence of special circumstances would be admissible and relevant in establishing malice/degree of murder at the guilty phase. Furthermore, any harm from the presentation of gory evidence could be prevented by a timely section 352 (Evid. Code, § 352) hearing or by limiting instructions which admonish jurors to consider the proof merely for purposes of establishing the truth of the special circumstance allegations. █ █ █ █ In our opinion, petitioner has failed to demonstrate prejudice, since the evidence would be introduced notwithstanding any special circumstance allegations.[5]

Thus, the special-circumstance allegations do not have to be stricken

---

[5]We also reject petitioner's contention that accused individuals are denied equal protection because the prosecution does not have to specify the degree of murder in cases involving special circumstance allegations. In essence, petitioner is suggesting that the accused has no method to challenge an unsupported special circumstance; as long as some degree of murder is proven, argues petitioner, there can be no reliance on Penal Code section 995 procedures. This argument fails to appreciate that individuals in such cases do have remedies—they can challenge the sufficiency of the evidence underlying special circumstance allegations on a pretrial motion made pursuant to section 995 and then have an appellate court review the sufficiency of the evidence to bind one over on the special circumstance in the event of a denial of the pretrial motion (Pen. Code, § 999a). (See *Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 954-955 [153 Cal. Rptr. 720].)

because the prosecution failed to charge petitioner with first degree murder.

## II

Petitioner then contends that it was error for respondent court to overrule his demurrer and to retain the special circumstance allegation of section 190.2, subdivision (a)(14). He argues that the allegation is void for vagueness under due process requirements. We disagree.

We note that the First District in *People* v. *Superior Court* (*Engert*) (1980) 105 Cal.App.3d 365 [164 Cal.Rptr. 210] agreed with the vagueness contention advanced by petitioner. Our state Supreme Court then denied a petition for hearing in *Engert*. The remittitur in the opinion was stayed because the Attorney General filed a petition for certiorari to the United States Supreme Court. The court granted certiorari in *Engert*, vacated the opinion, and remanded the matter to the First District so it could specify whether the ruling was based on federal and/or state constitutional grounds. Since *Engert* has been vacated, we are the first Court of Appeal to consider the constitutionality of section 190.2, subdivision (a)(14), after the United States Supreme Court's order.

Section 190.2, subdivision (a)(14), provides: "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found under Section 190.4, to be true:. . . *The murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity, as utilized in this section, the phrase especially heinous, atrocious or cruel manifesting exceptional depravity means a conscienceless, or pitiless crime which is unnecessarily torturous to the victim.*" (Italics added.) Under this statutory scheme, the jury first determines whether an accused is guilty of first degree murder. Once this determination is made, the jury decides whether the offense was attended by one of several special circumstances enumerated in section 190.2. A penalty of death or life without possibility of parole is mandatory following the finding of a special circumstance. (See *People* v. *Superior Court* (*Reed*) (1979) 98 Cal.App.3d 39, 45, 46-48 [159 Cal.Rptr. 310].) Subsequently, an evidentiary hearing on aggravation/mitigation is held to determine whether the penalty should be death or life confinement without the possibility of parole. (§ 190.3.) The defendant is entitled to specific findings that each special circum-

stance allegation is either true or not true. (§ 190.4, subd. (a).) The judge may override a jury-imposed death penalty if "the jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented." (§ 190.4, subd. (e).)

■ Our Supreme Court has stated that two considerations guide examination of a statute challenged on grounds of vagueness under the federal due process clause. The statute must be definite enough to provide (1) a standard of conduct for those whose activities are proscribed, and (2) a standard for the ascertainment of guilt by the courts called upon to apply it. (*People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974]; accord *Merandette* v. *City and County of San Francisco* (1979) 88 Cal.App.3d 105, 112 [151 Cal.Rptr. 580].) ■ A penal statute is vague if a person of common intelligence must speculate about its meaning. (*Lanzetta* v. *New Jersey* (1939) 306 U.S. 451, 453 [83 L.Ed. 888, 890, 59 S.Ct. 618].) As the United States Supreme Court has said in relation to capital punishment statutes, "[The state] must channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" (*Godfrey* v. *Georgia* (1980) 446 U.S. 420, 428, fn. omitted [64 L.Ed.2d 398, 406, 100 S.Ct. 1759, 1764-1765].)

In *Proffitt* v. *Florida* (1976) 428 U.S. 242 [49 L.Ed.2d 913, 96 S.Ct. 2960], the United States Supreme Court examined whether one of the aggravating circumstances in the Florida capital-sentencing system was vague under the prohibition against cruel and unusual punishment contained in the Eighth and Fourteenth Amendments.[6] The pertinent aggravating circumstance authorized the death penalty to be imposed if the crime was "especially heinous, atrocious, or cruel."[7] The high court noted that the Florida Supreme Court had interpreted this circumstance as being directed at "'the conscienceless or pitiless crime which is

[6]The court in *Proffitt* expressly stated in a footnote: "As in *Gregg*, we examine the claims of vagueness and overbreadth in the statutory criteria only insofar as it is necessary to determine whether there is a substantial risk that the Florida capital-sentencing system, when viewed in its entirety, will result in the capricious or arbitrary imposition of the death penalty. See *Gregg* v. *Georgia*, 428 U.S., at 201, 96 S.Ct., at 2938 n. 51." (*Proffitt* v. *Florida, supra*, 428 U.S. at p. 254, fn. 11 [49 L.Ed.2d at p. 924].)

In footnote 51 of the *Gregg* opinion, the court made clear that it was scrutinizing vagueness/overbreadth pursuant to the cruel-and-unusual-punishment prohibition of the Eighth and Fourteenth Amendments. (*Gregg* v. *Georgia* (1976) 428 U.S. 153, 201, fn. 51 [49 L.Ed.2d 859, 890, 96 S.Ct. 2909].)

[7](Fla. Stat. Ann., § 921.141 (5)(h) (Supp. 1976-1977).)

unnecessarily torturous to the victim.'" (*Proffitt, supra,* 428 U.S. at p. 255 [49 L.Ed.2d at p. 924].)[8] Based on this interpretation, the court found no infirmity under the Eighth and Fourteenth Amendments: "We cannot say that the provision, as so construed, provides inadequate guidance to those charged with the duty of recommending or imposing sentences in capital cases. See *Gregg* v. *Georgia, ante,* [428 U.S.,] at 200-203 [96 S.Ct., at 2938-2939]." (*Proffitt* v. *Florida, supra,* 428 U.S. at pp. 255-256 [49 L.Ed.2d at p. 925].)

Recently, in *Godfrey* v. *Georgia, supra,* 446 U.S. 420 [64 L.Ed.2d 398, 100 S.Ct. 1759], the United States Supreme Court ruled that the Georgia courts had not properly narrowed the statutory aggravating circumstance of imposing death when it was found that the offense "'was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.'" (*Id.,* at pp. 422, 428 [64 L.Ed.2d at pp. 403, 406, 100 S.Ct. at pp. 1762, 1765].) The court noted that the Georgia Supreme Court had affirmed a death sentence upon this language, without attempting to channel more restrictively the jury's discretion. It stated: "There is nothing in these few words, *standing alone,* that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.' Such a view may, in fact, have been one to which the members of the jury in this case subscribed." (*Id.,* 446 U.S. at p. 428 [64 L.Ed.2d at p. 406, 100 S.Ct. at p. 1765, italics added.) We find *Godfrey* is distinguishable from the situation in *Proffitt,* where the state supreme court adequately narrowed the Florida statutory language. It is noteworthy that section 190.2, subdivision (a)(14), specifically adopts the limiting interpretation condoned in *Proffitt.*

Although *Proffitt* did not address vagueness under the due process clause to the federal Constitution, this contention was subsequently explored by the Fifth Circuit. In *Spinkellink* v. *Wainwright* (5th Cir. 1978) 578 F.2d 582, certiorari denied (1979) 440 U.S. 976 [59 L.Ed.2d 796, 99 S.Ct. 1548], rehearing denied (1979) 441 U.S. 937 [60 L.Ed.2d 667, 99 S.Ct. 2064], petitioner claimed that Florida's "especially heinous, atrocious, or cruel" aggravating circumstance was overbroad under due process principles. The federal appellate court rejected this contention by pointing to the cogent reasoning of a Florida Supreme Court case: "In *State* v. *Dixon,* . . . the Florida Supreme Court, in hold-

[8]The court was quoting from the Florida Supreme Court case of *State* v. *Dixon* (Fla. 1973) 283 So.2d 1, 9.

ing constitutional Fla.Stat.Ann. §§ 775.082, 782.04, and 921.141,... also considered the certified question of whether the aggravating circumstance in Section 921.141 (5)(h) is so 'vague, indefinite and uncertain,' 283 So.2d at 3, as to violate,...Fourteenth Amendment due process. The court answered this question in the negative:

"'The aggravating circumstance which has been most frequently attacked is the provision that commission of an especially heinous, atrocious or cruel capital felony constitutes an aggravated capital felony. Fla.Stat. § 921.141 (6)(h), F.S.A. Again, we feel that the meaning of such terms is a matter of common knowledge, so that an ordinary man would not have to guess at what was intended. It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies—the conscienceless or pitiless crime which is unnecessarily torturous to the victim.' 283 So.2d at 9. This definition has been followed repeatedly by the Florida Supreme Court. [Citations.]...We agree on Fourteenth Amendment due process grounds with the United States Supreme Court in *Proffitt* that Section 921.141 (5)(h), as construed by the Florida Supreme Court, provides adequate guidance to those charged with the duty of recommending or imposing sentences in capital cases. See *Proffitt v. Florida, supra*, 428 U.S. at 255, 96 S.Ct. at 2968 (opinion of Stewart, Powell, and Stevens, JJ.). The contentions that Section 921.141 (5)(h) are vague and overbroad are therefore without merit." (*Spinkellink v. Wainwright, supra*, 578 F.2d at p. 611, fn. omitted.)

■ With the *Proffitt-Spinkellink* analysis in mind, we do not believe it can be said that section 190.2, subdivision (a)(14), is vague on federal due process grounds. An examination of the California special circumstance shows that it contains the exact wording sustained in *Proffitt*. Moreover, the provision also contains the clarifying language which made the Florida aggravating circumstance valid as construed by its appellate courts. As noted by *Spinkellink*, the language "especially heinous, atrocious, or cruel" has a meaning known by ordinary jurors. This means that it possesses the requisite clarity under Fourteenth Amendment due process. (See *McCaughan, supra*, 49 Cal.2d 409, 414.) *Spinkellink* convincingly demonstrates that there is no ascertainable

difference between vagueness analysis under either the cruel-and-unusual-punishment prohibition or due process principles.[9]

Since *Proffitt* and *Spinkellink* were based on federal constitutional grounds, the question then becomes whether the vagueness doctrine is more exacting under the due process clause found in our state Constitution (Cal. Const., art. I, § 15).[10] An examination of the law convinces us that vagueness contentions under the state Constitution should be governed by the principles which guide a resolution of similar Fourteenth Amendment claims.

Several cases have stated that the California due process provision is identical in scope and purpose with the Fourteenth Amendment of the federal Constitution. (See *Gray* v. *Hall* (1928) 203 Cal. 306, 318 [265 P. 246]; *Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1, 20 [94 Cal.Rptr. 904]; *Abstract Investment Co.* v. *Hutchinson* (1962) 204 Cal.App.2d 242, 245 [22 Cal.Rptr. 309]; *Manford* v. *Singh* (1919) 40 Cal.App. 700, 701 [181 P. 844].) Although most of these opinions dealt with procedural due process or substantive due process as it relates to property rights, our state Supreme Court coterminously cited the federal and state due process clauses in at least one case involving a vagueness claim. (See *People* v. *Barksdale* (1972) 8 Cal.3d 320, 332 [105 Cal. Rptr. 1, 503 P.2d 257].) Furthermore, it has also been decided that California due process clauses, like the Fifth Amendment of the federal Constitution, apply to state (rather than private) action. (*Garfinkle* v. *Superior Court, supra*, 21 Cal.3d 268, 281-282 (Cal. Const., art. I, § 7, subd. (a)); *Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352, 366-367 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266] (former art. I, § 13).) Nevertheless, the court in *Kruger* specifically stated, "We by no means imply that the California due process clause must in all instances

[9]This result is also supported by language found in a Florida Supreme Court decision. In *Tedder* v. *State* (Fla. 1975) 322 So.2d 908, 910, the court indicated that a killing must be *especially* heinous, atrocious or cruel to be considered as an aggravating factor by the sentencing judge. Since the evidence did not clearly support a death sentence, the Florida Supreme Court quashed the judge's death sentence and reinstated the jury's advisory sentence of life imprisonment. (*Id.*, at pp. 910-911.) Since the California special circumstance contains the important word "especially," *Tedder* provides additional support for sustaining section 190.2, subdivision (a)(14), from due process attack. (See also *Proffitt* v. *Florida, supra*, 428 U.S. at p. 255 [49 L.Ed.2d at p. 924] (cites to *Tedder* in concluding that Florida's aggravating circumstance is not vague).)

[10]Section 15 of article I of our state Constitution provides in relevant part that, "persons may not...be deprived of life, liberty, or property without due process of law." Prior to 1974, the California due process guaranty was set forth in former article I, section 13. (See *Garfinkle* v. *Superior Court* (1978) 21 Cal.3d 268, 281, fn. 18 [146 Cal. Rptr. 208, 578 P.2d 925], app. dism. (1978) 439 U.S. 949 [58 L.Ed.2d 340, 99 S.Ct. 343].)

be interpreted identically with the due process clause of the Fifth Amendment. [Citation.]" (*Kruger, supra,* at p. 367, fn. 21.)

We recognize state constitutional provisions can be interpreted to provide more protection than parallel safeguards found in the federal Constitution.[11] Prudent reasoning, however, supports the position that vagueness analysis is coextensive under both the federal and California due process clauses.

Our state Supreme Court has acknowledged that federal interpretation of constitutional provisions provides "valuable guidance in the interpretation of our state constitutional guarantees." (*People* v. *Chavez, supra,* 26 Cal.3d at p. 352, and cases cited therein.) As noted by one commentator, "For a state court interpreting a state constitu[t]ion, opinions of the United States Supreme Court are like opinions of sister state courts or lower federal courts. While neither binding in a constitutional sense nor precedential in a jurisprudential one, they are entitled to whatever weight their reasoning and intellectual persuasiveness warrant. One would expect a state court to deal carefully with a Supreme Court opinion and to explain forthrightly why it found itself constrained to reason differently." (Falk, *The State Constitution: A More Than "Adequate" Nonfederal Ground* (1973) 61 Cal.L.Rev. 273, 283.) We find no persuasive reason for departing from the analysis of vagueness problems enunciated in *People* v. *McCaughan, supra,* 49 Cal.2d 409. *McCaughan* based its bipartite test upon time-honored and well-reasoned decisions of the United States Supreme Court. (See case authority cited in *McCaughan, supra,* 49 Cal.2d at p. 414.) Even though concerned with due process analysis under the Fourteenth Amendment, *McCaughan* sets forth a uniform standard for gauging the definiteness of penal statutes not involving Bill of Rights freedoms.

No higher standard of review pursuant to California Constitution, article I, section 15, should be applied in determining the vagueness of the

[11](See Cal. Const., art. I, § 24 ("[r]ights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution"); *People* v. *Glaze* (1980) 27 Cal.3d 841, 844, fn. 2 [166 Cal.Rptr. 859, 614 P.2d 291] (California freedom-of-expression clause more protective than First Amendment); *People* v. *Chavez* (1980) 26 Cal.3d 334, 351-352 [161 Cal.Rptr. 762, 605 P.2d 401] ("'state courts in interpreting provisions of the state Constitution are not necessarily concluded by an interpretation placed on similar provisions in the federal Constitution.'"); *In re Johnny G.* (1979) 25 Cal.3d 543, 558-559 [159 Cal.Rptr. 180, 601 P.2d 196] (independent meaning can be assigned to state constitutional provisions); see also *People* v. *Dooley* ▮(Cal.App.) and cases cited therein.)

special circumstance involved here. For purposes of illustration, it is interesting to note that the court which penned the vacated *Engert* decision invalidated Penal Code section 190.2, subdivision (a)(14), upon the analysis contained in *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 249 [158 Cal.Rptr. 330, 599 P.2d 636]. We believe the dissent in *Engert* correctedly noted that reliance upon *Pryor* is inappropriate, since it involved invocation of the stricter form of due process analysis traditionally applied to *First Amendment rights.*[12] As further observed by one commentator, "[T]he doctrine of unconstitutional indefiniteness has been used by the Supreme Court almost invariably for the creation of an insulating buffer zone of added protection at the peripheries of several of the Bill of Rights freedoms." (Note, *The Void-For-Vagueness Doctrine in the Supreme Court* (1960) 109 U.Pa.L.Rev. 67, 75.) It would be inapposite to examine the present vagueness contention under the *Pryor* standard, since homicide is not an activity falling within the protective umbrella of the Bill of Rights. Furthermore, use of the stricter standard in gauging the constitutionality of the special circumstance here would result in disparate treatment; courts would have to speculate on what standard was applicable from one penal provision to the next.

It is also noteworthy that California Constitution, article I, section 27, states that "The death penalty... shall not be deemed to be, or to constitute, the infliction of cruel or unusual punishments within the meaning of Article 1, Section 6 nor shall such punishment for such offenses be deemed to contravene *any other provision of this constitution.*" (Italics added.) This language provides additional support for our belief that petitioner's vagueness contention must be evaluated under *federal* principles.

Because the vagueness doctrine under the California due process clause is governed by the same analysis applicable to the Fourteenth Amendment, *Proffitt* and *Spinkellink* dispositively lead us to conclude that there is adequate specificity in the special circumstance language challenged here. Thus, we find ourselves in agreement with the following language from a portion of the dissent to the vacated *Engert* decision: "...even if the due process clause requires the same specificity in defining special circumstances as it requires in the definition of the crime itself, that demand has been met. Is there any doubt that a juror or a potential murderer can determine what is meant by 'a conscienceless or pitiless crime which is unnecessarily torturous to the victim'? These terms define themselves. They have no different meaning in law

---

[12]The dissenting judge in *Engert* succinctly stated, "Such First Amendment concerns are not apposite to murder." (Dis. opn. of Poché, J.)

than they have when used in ordinary conversation. The idea intended to be expressed by these words cannot be made more clear by any other judge-blessed words in the English language, except by an all inclusive listing of specific examples." (Dis. opn. of Poché, J.)

Petitioner opposes our reliance on *Proffitt* by contending that section 190.2, subdivision (a)(14), occupies a significantly different position in California's statutory scheme than the similar provision does in Florida's sentencing system. In particular, the following differences are stressed: (1) the "especially heinous" provision is merely one of the aggravating circumstances in Florida; (2) Florida jurors do not have to make a finding on the aggravating circumstances; and (3) the judge in the Florida system ultimately imposes the actual sentence, since the jury's decision is merely advisory. The purported differences between the two state systems are inconsequential and do not render *Proffitt* inapplicable. A comparative examination reveals that the California system is either identical to or more protective than Florida's scheme.

Unlike the Florida system, the death penalty statute in California contains an extra buffer zone against arbitrary application of the death penalty. Florida deems all first degree murders to be *automatically* capital offenses, whereas first degree murder by itself is not a capital felony in California. The California scheme designates the murder as capital *only if* the jury determines the existence of one or more special circumstances. Special circumstances are not part of the pleading process or guilt phase in Florida. Instead, the "especially heinous" circumstance is one of the aggravating factors used in choosing between death and life imprisonment at the *penalty* phase. Contradistinguished, the "especially heinous" provision in California is a special circumstance which must be found true in the *guilt* phase *before* aggravating/mitigating circumstances are weighed for purposes of determining the penalty. In the Florida penalty phase, the sentencing choice is between death and life imprisonment, which includes the possibility of parole. On the other hand, *following the finding of a special circumstance* at the California guilt phase, the sentencing choice narrows to death or life without possibility of parole. (See *People* v. *Superior Court (Reed), supra*, 98 Cal.App.3d 39, 47.)

A comparison of the two systems shows that the choices at the penalty phase are almost identical. However, California affords an intermediate step before the penalty phase—consideration of special circumstances—which more completely safeguards an accused facing the possibility of the death penalty. (See *People* v. *Jackson, supra*, 28 Cal.

3d 264, 316-317.) Since this process occurs at the guilt phase, it provides an extra step against capricious application of the death penalty itself.

More significantly, there are no operational differences between the California and Florida schemes at the penalty phase. The sentencing range is similar at this stage: death to life without possibility of parole in California, compared with death to life with the possibility of parole in Florida. Moreover, the trial judge's role at the penalty phase in both statutory schemes in nearly identical. This was recognized by our Supreme Court in the following observation from *People* v. *Frierson* (1979) 25 Cal.3d 142, 177 [158 Cal.Rptr. 281, 599 P.2d 587]: "It is further significant that the Florida statute upheld in *Proffitt* v. *Florida,* . . . 428 U.S. 242, resembles the 1977 California statute, perhaps even more closely than the Georgia model. In Florida, an advisory jury is directed to consider '"[w]hether sufficient mitigating circumstances exist . . . which outweigh the aggravating circumstances found to exist; and . . . [b]ased on these considerations, whether the defendant should be sentenced to life [imprisonment] or death."' (*Id.,* at p. 248 [49 L.Ed.2d at p. 921].) The Florida statute contains a list of the aggravating and mitigating factors to be considered. The trial judges under both Florida and California procedures perform the same weighing function in determining sentence following the jury's recommendation; the judge must specify in writing the findings upon which the death sentence is based. (*Id.,* at p. 250 [49 L.Ed.2d at pp. 921-922].) As the plurality opinion in *Proffitt* stresses, 'On their face these procedures, like those used in Georgia, appear to meet the constitutional deficiencies identified in *Furman.* The sentencing authority in Florida, the trial judge, is directed to weigh eight aggravating factors against seven mitigating factors to determine whether the death penalty shall be imposed. This determination requires the trial judge to focus on the circumstances of the crime and the character of the individual defendant.' (*Id.,* at p. 251 [49 L.Ed.2d at p. 922].)

"We find worthy of note that the aggravating and mitigating factors enumerated in the Florida statute are almost identical to the special circumstances, and the aggravating and mitigating factors, described in the California act. (See 428 U.S. at pp. 248-249, fn. 6 [49 L.Ed.2d at p. 921].)" (Accord *People* v. *Jackson, supra,* 28 Cal.3d 264, 316.) Nevertheless, it is argued that an experienced judge at the penalty phase would be able to give more consistent application to the subdivision (a)(14) language than jurors at the guilt phase. Such analysis overlooks the fact that both the California and Florida schemes involve similar

sentencing choices[13] and the trial judges perform "the same weighing function" at the penalty stage. (*Frierson, op. cit.*) This effectively means that judges under the two systems can guard against arbitrary application of the death penalty at the critical penalty phase. Moreover, since the factors in aggravation and mitigation are similar in both schemes (*ibid.*), it appears inconsequential that California jurors consider the "especially heinous" factor at the guilt phase.

Petitioner suggests that the *Frierson* language is inapplicable, since it was only considering the judge's role at the *penalty* stage of the California/Florida schemes. Instead, he contends that jurors are more likely to apply arbitrarily the special circumstances at the *guilt* phase, as opposed to a more rational application by a seasoned sentencing judge at the *penalty* stage. Although aptly depicting an operational difference in the two systems, petitioner ignores that the trial judge has the same function at the *penalty* stage in the two schemes. Since both states vest control in the judge following the jury's penalty recommendation, there is no possibility that the death penalty itself can be levied by California jurors in a more capricious manner.

In our opinion, the reasoning in *Proffitt* and *Spinkellink* compels the conclusion that the challenged special circumstance passes constitutional scrutiny. We therefore hold that the special circumstance contained in section 190.2, subdivision (a)(14), is not vague under either the Fourteenth Amendment of the United States Constitution or the due process clause of the California Constitution.

■ Finally, we note that section 190.2, subdivison (a)(14), is part of an initiative measure approved by the voters in 1978. Such acts are presumptively constitutional and will be upheld "'unless their unconstitutionality clearly, positively and unmistakably appears.'" (*In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296].) Since the "especially heinous" special circumstance is not *unmistakably* vague under the due process clause, it must be presumed valid.

The petition for writ of prohibition and/or mandate is denied.

Hanson (P. D.), J., and Conn, J.,* concurred.

A petition for a rehearing was denied January 7, 1981, and on January 8, 1981, the opinion was modified to read as printed above. Petitioner's application for a hearing by the Supreme Court was denied February 5, 1981. Bird, C. J., and Mosk, J., were of the opinion that the application should be granted.

---

[13]The only difference is that Florida allows imposition of life imprisonment *with* the possibility of parole.

*Assigned by the Chairperson of the Judicial Council.