[No. B065226. Second Dist., Div. Four. Feb. 1, 1993.]

THE PEOPLE, Plaintiff and Appellant, v.
PHILIP RUDOLFO ALONZO, Defendant and Respondent.

**COUNSEL**

Ira Reiner, District Attorney, Maurice H. Oppenheim and Wendy C. Forward, Deputy District Attorneys, for Plaintiff and Appellant.

Nasatir & Hirsch, Michael D. Nasatir and Vicki I. Podberesky for Defendant and Respondent.

## OPINION

**WOODS (A. M.), P. J.**—Respondent Philip Rudolfo Alonzo was charged with having willfully and unlawfully discharged a firearm in a grossly negligent manner which could result in injury or death to a person in violation of Penal Code section 246.3 after he shot a gun into the air in a commercial area of the City of Montebello at 2 a.m. on December 9, 1990.

After a brief preliminary hearing, the magistrate denied respondent's motion to set aside the charge. Upon review of the transcript of that hearing, the superior court granted the motion on the ground that the preliminary hearing evidence did not show gross negligence or evidence that the shooting could have harmed or injured a person.[1] For reasons explained in this opinion, we conclude that the magistrate's belief that respondent violated section 246.3 was reasonable. We therefore reverse the superior court's order setting the charge aside.

The only witness called by the prosecution at respondent's preliminary hearing was Montebello Police Officer Jeffrey Hanes. He testified that at the time of the incident he was off duty, sitting in his personal vehicle in a parking lot in a commercial area where he had just purchased a soft drink and something to eat. He looked up when he heard a gunshot and saw respondent stepping off the curb in front of a 7-Eleven store. Respondent's right hand was extended above his head. In it he held a Beretta 92-F which was pointed straight up. Respondent shot two rounds into the air and said loudly, " 'I hate it when they don't believe me.' " Officer Hanes did not see anyone who appeared to be menacing respondent, and it did not appear to him that respondent was involved in any altercation.

Respondent walked to a parked vehicle, put the weapon under the right front passenger seat, and spoke to the driver. Two other people came out of a nearby store and got into the car. Officer Hanes followed the vehicle as it left the parking lot.

The area where this incident occurred was described as a "commercial business located on a four-lane thoroughfare street." The parking lot served

---

[1]Immediately upon this ruling, respondent's counsel indicated that a plea would be entered to count 2. Respondent informs this court that count 2 charged him with violation of Montebello Municipal Code section 4231, unauthorized discharge of a firearm within the city limits. The record before us does not reflect this fact. Nor does it reflect the entry of a plea to such charge.

several small stores, three of which were open for business at the time. Those 3 were the 7-Eleven store, an adjacent 24-hour donut shop and a Domino's Pizza about 100 yards away. Officer Hanes described the area as "quite busy[.]" He testified that "[t]here was a lot of pedestrian traffic going in and out of the store making purchases, mainly alcohol because it's coming up on . . . 2:00 o'clock on a weekend, getting kind of a rush at that time."

## DISCUSSION

In an appeal from an order of the superior court granting a Penal Code section 995 motion, we disregard the ruling of the superior court and directly review the determination of the magistrate holding the defendant to answer. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].) Our task is to determine whether the magistrate, acting as a person of ordinary prudence, could conscientiously entertain a reasonable suspicion that the defendant committed the crime charged. (*People* v. *Stansbury* (1968) 263 Cal.App.2d 499, 502 [69 Cal.Rptr. 827].) To that end, we draw every legitimate inference supported by the competent evidence and refrain from substituting our judgment for that of the magistrate. If the record demonstrates some showing of every element of the charge (*People* v. *Love* (1988) 203 Cal.App.3d 1505, 1507 [251 Cal.Rptr. 6]), we must affirm the magistrate's ruling denying the motion to set the charge aside (*People* v. *Prance* (1991) 226 Cal.App.3d 1525, 1530 [277 Cal.Rptr. 567]).

Penal Code section 246.3, enacted in 1988, provides: "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense and shall be punished by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison."

As appellant points out, there is no case law interpreting Penal Code section 246.3. It appears from the language of the statute, however, that the prosecution was required to produce some evidence of the following elements in order to justify an order holding him to answer to the charge: (1) the defendant unlawfully discharged a firearm; (2) the defendant did so intentionally; (3) the defendant did so in a grossly negligent manner which could result in the injury or death of a person.

Respondent's motion raised no issue as to the first two elements. At the close of the preliminary hearing, his counsel argued simply that the firing of

a gun straight up into the air did not constitute grossly negligent conduct within the meaning of the statue.[2]

Appellant contends it satisfied its burden because the evidence presented at the preliminary hearing demonstrated that respondent acted with an " 'I don't care what happens' " state of mind which constitutes conscious indifference to the consequence of his act or, in other words, gross negligence. Respondent counters that the manner in which he discharged the firearm does not rise to the level of gross negligence. Respondent claims that the magistrate's conclusion to the contrary rested upon speculation that " 'what goes up must come down[.]' "

Our review of the legislative history of Penal Code section 246.3 reveals that this statute was intended to deter the discharge of firearms on holidays such as New Year's and the Fourth of July (Sen. Rules Com. on Assem. Bill No. 3066, 3d reading (Aug. 11, 1988)), thereby supplementing existing law relating to criminal liability for the discharge of a firearm.[3]

Before it was enacted, the proposed legislation was amended several times to refine the circumstances under which criminal liability attached. (Legis. Counsel's Digest, Assem. Bill No. 3066 (1987-1988 Reg. Sess.).) The two final amendments added the "grossly negligent manner" language and the modifying phrase "which could result in injury or death to a person." (Sen. Amend. to Assem. Bill No. 3066 (1987-1988 Reg. Sess.) Aug. 11, 1988; Legis. Counsel's Dig., Assem. Bill No. 3066 (1987-1988 Reg. Sess.).) Since the Legislature did not define "gross negligence" for purposes of the statute, it appears from the statutory language and the legislative history that it intended that term to have the meaning commonly attributed to it in criminal law, but to criminalize such conduct only if, under the circumstances, it actually had the potential for culminating in personal injury or death.

■ Gross negligence, as a basis for criminal liability, requires a showing that the defendant's act was " 'such a departure from what would be the

---

[2]In the superior court respondent also contended that a city ordinance regulating the unauthorized discharge of a firearm within city limits was preempted by Penal Code section 246.3. This issue was not ruled upon by the superior court and is not raised in this appeal. Therefore, we need not and do not discuss it.

[3]The Digest described the existing law as follows: "Under existing law, it is a felony to maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, inhabited housecar, inhabited camper, or unoccupied aircraft. It is a misdemeanor, under existing law, to discharge any firearm without the written permission of the owner of certain land, or the owner's agent or the person in lawful possession of the land. It is also a misdemeanor, under existing law, to shoot any firearm from, or upon, a public road or highway." (Assem. Bill No. 3066 (1987-1988 Reg. Sess.) read 3d time and amended Aug. 11, 1988; Legis. Counsel's Dig., Assem. Bill No. 3066 (1987-1988 Reg. Sess.).)

conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life, or, in other words, a disregard of human life or an indifference to consequences.' " (*People* v. *Penny* (1955) 44 Cal.2d 861, 879 [285 P.2d 926], quoting 26 Am.Jur., Homicide, § 210, p. 299; CALJIC No. 3.36.) It is beyond dispute that shooting a gun in a commercial area where people are present constitutes gross negligence under this definition.

Therefore, the only remaining issue is whether respondent's grossly negligent behavior could have resulted in injury or death to a person. We have no difficulty in concluding that it could. The shooting of a gun under the circumstances presented in this case not only presented the possibility of hitting a member of the public, it also presented the very real possibility that it would generate responsive gunfire. The fact that the gun was pointed up in the air does not change this reality. In fact, this was precisely the type of behavior that the statute was intended to deter. The author of the bill explained that it "addresse[d] the reckless and senseless discharge of weapons on holidays that resulted in the death of at least 2 persons, . . . in the Los Angeles area alone." (Letter from Assem. Richard Polanco to Gov. George Deukmejian for signature on Assem. Bill No. 3066, Sept. 12, 1988.) Therefore, the magistrate properly denied respondent's motion to set the charge aside.

For the foregoing reasons, we reverse the order of the superior court granting respondent's motion pursuant to Penal Code section 995, and remand this matter for further proceedings.

Epstein, J., and Taylor, J.,* concurred.

A petition for a rehearing was denied March 2, 1993.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.