# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-3908

SALVADOR LEMUS-RODRIGUEZ,

*Petitioner,*

*v.*

JOHN D. ASHCROFT, Attorney General of the United States,

*Respondent.*

_____

Petition to Review an Order of the
Board of Immigration Appeals.
No. A-91-492-598.

_____

ARGUED SEPTEMBER 30, 2003—DECIDED NOVEMBER 26, 2003

_____

Before BAUER, POSNER, and DIANE P. WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* Salvador Lemus-Rodriguez, a citizen of Mexico, has been an illegal resident of the United States since 1983 (except for a brief return to Mexico during the 1980s). Eventually the Immigration and Naturalization Service instituted removal (as deportation is now called) proceedings against him. He conceded that he was removable, but applied for cancellation of removal, a form of discretionary relief for which a long-time illegal resident can apply. See Immigration and Nationality Act, § 240A(b)(1), 8 U.S.C. § 1229b(b)(1). The immigration judge turned down his application on the ground that he was ineligible because

he had been convicted of attempted reckless discharge of a firearm, in violation of Illinois law, 720 ILCS 5/24-1.5, by firing a rifle into the air on New Year's Eve. An alien who has been convicted of violating any federal or state law that, so far as pertains to this case, makes it a crime to attempt to use any weapon "which is a firearm or destructive device" as defined in 18 U.S.C. § 921(a) is ineligible for cancellation of removal. 8 U.S.C. § 1227(a)(2)(C); see 8 U.S.C. § 1229(b)(1)(C). The definition of "destructive device" in 18 U.S.C. § 921(a) includes "any type of weapon . . . which will . . . expel a projectile," and therefore includes a rifle, except "a rifle which the owner intends to use solely for sporting, recreational or cultural purposes." 18 U.S.C. § 924(a)(4). Lemus-Rodriguez argues that he comes within the exception because firing a rifle into the air to celebrate New Year's Eve is pursuant to a "cultural purpose." The immigration judge disagreed and issued a final order of removal against Lemus-Rodriguez (while allowing him to depart voluntarily before the order takes effect, cf. *Huicochea-Gomez v. INS*, 237 F.3d 696, 698 (6th Cir. 2001), which will make it easier for him to reenter the United States lawfully someday, *Kaczmarczyk v. INS*, 933 F.2d 588, 597-98 (7th Cir. 1991)), and the Board of Immigration Appeals affirmed without opinion.

There is a threshold question of our jurisdiction to review the order. A "final order of removal against an alien who is removable by reason of having committed" certain crimes, including firearm offenses covered by 8 U.S.C. § 1227(a)(2)(C), is appealable only on the ground that the alien didn't commit one of the specified offenses. 8 U.S.C. § 1252(a)(2)(C). Thus jurisdiction and merits merge. *Bazan-Reyes v. INS*, 256 F.3d 600, 604 (7th Cir. 2001); *Luu-Le v. INS*, 224 F.3d 911, 914 (9th Cir. 2000). If section 1252(a)(2)(C) is applicable, as the government contends, Lemus-Rodri-

guez committed a firearms offense covered by section 1227(a)(2)(C) and we have no jurisdiction and must dismiss the appeal. If, however, he did not commit a firearms offense covered by that section, the final order of removal is appealable and we would have to vacate it because the decision that he is ineligible for cancellation of removal would be erroneous. This is clear, though odd. "To permit judicial review into the validity of the INS's determination that an alien is deportable by reason of having committed one of the listed crimes, in the guise of making a determination as to the court's jurisdiction, is to permit review of the very fact or condition that the statute appears on its face to be precluding from review." *Berehe v. INS*, 114 F.3d 159, 162 (10th Cir. 1997).

We do not think section 1227(a)(2)(C) applies in a case such as this in which a firearms or other offense specified in the section is not the basis on which the alien was found to be removable, but instead is the ground for denying extraordinary relief from the order. The other courts to have faced the issue have split. *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 210 n. 6 (3d Cir. 2003). Compare *Garcia v. United States*, 329 F.3d 1217, 1221-22 (11th Cir. 2003); *Lopez-Elias v. Reno*, 209 F.3d 788, 793 (5th Cir. 2000); *Ruckbi v. INS*, 159 F.3d 18, 20-21 (1st Cir. 1998), with *Alvarez-Santos v. INS*, 332 F.3d 1245, 1253 (9th Cir. 2003); *Yousefi v. INS*, 260 F.3d 318, 325 (4th Cir. 2001); *Choem v. INS*, 129 F.3d 29, 37-38 (1st Cir. 1997). Some of these cases deal with a predecessor statute with slightly different wording, but the difference is immaterial.

Although Lemus-Rodriguez's firearms offense was a ground on which he could have been ordered removed, see 8 U.S.C. § 1227(a)(2)(C); *Beslic v. INS*, 265 F.3d 568, 569 (7th Cir. 2001); *Adefemi v. Ashcroft*, 335 F.3d 1269, 1273 (11th

Cir. 2003); *Rankine v. Reno*, 319 F.3d 93, 96 (2d Cir. 2003), it was not the ground on which he was determined to be removable. This means that had he not asked for cancellation of removal, but instead had denied removability yet have been found removable, he could have appealed from the removal order. The government seems to think that if the alien's conviction of a firearms offense is injected in any manner and at any stage in a removal proceeding—perhaps merely noticed in passing, with no legal significance being attached to it—the final order in that proceeding is unappealable, simply because the offense would have been a ground for removal. That is a possible approach, but there is nothing in the language quoted above or in the history of the provision to suggest that it is what Congress enacted.

So we have jurisdiction, and come to the merits, where the ultimate question (no longer one of jurisdiction, if the foregoing analysis is correct) is whether firing a gun in the air to celebrate New Year's Eve is a "cultural" use of a gun. But the government says that we cannot reach the issue, first because we cannot consider the facts underlying Lemus-Rodriguez's Illinois conviction (the charging papers in that proceeding do not indicate the circumstances of his reckless behavior, i.e., that it was in celebration of a holiday, though a clever reader could easily infer from the fact that the crime was "shooting a rifle in the air" and occurred "on or about January 1" that that was indeed the character of the crime), and second because the "cultural purpose" exception is not applicable to firearms, but only to other destructive devices, such as firecrackers. We disagree with both arguments. When the circumstances of a crime are uncontested, the principal objection to peeking behind the charging documents—that it would incite a trial within a trial, *Taylor v. United States*, 495 U.S. 575 (1990); *United States v. Allen*, 282 F.3d 339, 343 (5th Cir. 2002), falls away, and the peek is

permitted. *United States v. Rezin*, 322 F.3d 443, 448-49 (7th Cir. 2003); *United States v. Alvarez-Martinez*, 286 F.3d 470, 475 (7th Cir. 2002). The circumstances are not uncontested here, but since the statutory exception for cultural uses cannot be applied without determining the facts underlying the conviction, the general rule cannot apply. *United States v. Londono-Quintero*, 289 F.3d 147, 151-52 (1st Cir. 2002); cf. *United States v. Shannon*, 110 F.3d 382, 384-85 (7th Cir. 1997) (en banc).

As for whether the "cultural purpose" exception applies to guns, we cannot see why not, either as a matter of text or as a matter of statutory purpose imputable to Congress. It is true that 8 U.S.C. § 1229(b)(1)(C) denies eligibility for cancellation of removal to anyone convicted of a crime that involves the use of a "firearm *or* a destructive device" (emphasis added), and we saw that "firearm" is defined without reference to a "cultural purpose" or any other approved purpose, such as sport and recreation. But "destructive device" we know is defined to include a firearm unless it is a rifle used for one of the approved purposes. It would be passing odd if the government by its choice of whether to describe the firearm as a firearm *simpliciter* or as a destructive device, to wit, a firearm, could extinguish Congress's evident intent *not* to make a subclass of firearms (namely rifles) used for approved purposes, albeit used in a criminal manner, a basis for precluding cancellation of removal. A cultural purpose for using a rifle, for example to make a war movie or a detective movie, is actually easier to imagine than the use of a number of other destructive devices, such as bombs and machine guns, for similar purposes.

So Lemus-Rodriguez is not barred from claiming that his criminal use of the rifle had a "cultural purpose." But the

claim fails. Although there is no relevant legislative history or judicial interpretation, we think it is pretty clear that Lemus-Rodriguez's use of his rifle was not cultural. Shooting rifles in the air to celebrate a holiday is part of the culture of some other countries, but it is not part of *American* culture, where for good reasons it is regarded as a dangerously, and criminally, irresponsible use of a firearm. *Valerio-Ochoa v. INS*, 241 F.3d 1092, 1095 (9th Cir. 2001); *People v. Clem*, 78 Cal. App. 4th 346, 350 (Cal. App. 2000); *People v. Alonzo*, 13 Cal. App. 4th 535, 539-40 (Cal. App. 1993). The immigration judge was thus quite right to rule that Lemus-Rodriguez is not eligible for cancellation of removal.

PETITION TO REVIEW DENIED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*