Gilbert ROMERO, Petitioner—
Appellant,

v.

Jim HAMLET, Warden, Respondent—
Appellee.

No. 03–17188.

D.C. No. CV–03–00637–MCE.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 2004.

Decided Nov. 10, 2004.

Charles M. Bonneau, Sacramento, CA, for Petitioner–Appellant.

Judy Kaida, AGCA—Office of the California Attorney General, Sacramento, CA, for Respondent–Appellee.

Before REINHARDT, THOMPSON, and BERZON, Circuit Judges.

## MEMORANDUM *

Gilibert Romero was tried for the fatal shooting of his girlfriend in a rural area near the Sacramento River on the night of October 24, 1995.[1] The trial court instructed the jury that it could convict Romero of second degree murder under any of three theories: (1) express malice, based on intent to kill without premeditation; (2) implied malice based on the performance of an act inherently dangerous to human life (in this case, shooting a gun in the darkness in the victim's vicinity) with conscious disregard of the danger; or (3) second degree felony murder, based on the felony of willfully discharging a firearm with gross negligence in a manner that could cause injury or death (Cal.Penal Code § 246.3).[2] On July 27, 2000, the jury

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because the parties are acquainted with the facts and procedural history of this case, we repeat only an abbreviated summary here.

2. Section 246.3 provides: "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense and shall be punished by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison."

convicted Romero of murder with the use of a firearm in violation of California Penal Code § 12022.5(a).

In this appeal, Romero argues that the trial court deprived him of due process by instructing the jury that Cal.Penal Code § 246.3, grossly negligent discharge of a firearm, could serve as a predicate offense for a second degree felony murder conviction. Two challenges underlie his claim: first, that it was not foreseeable in 1995 that a violation of § 246.3 would be deemed an inherently dangerous felony and second, that it was not foreseeable in 1995 that the "merger" doctrine would not apply to a violation of § 246.3.

## I.

■ Due process is violated when an unforeseeable judicial construction of a criminal statute fails to provide fair warning that the offensive conduct is criminal. *See Bouie v. Columbia*, 378 U.S. 347, 352–55, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *LaGrand v. Stewart*, 133 F.3d 1253, 1260 (9th Cir.1998). Under *Bouie* and subsequent cases, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). This is not the case here, notwithstanding that as of the date of Romero's offense in 1995, there was no case law holding that a violation of § 246.3 constituted the commission of an inherently dangerous felony.

One year prior to the offense in question, the California Supreme Court held that a violation of a statute akin to § 246.3 was inherently dangerous. *See People v. Hansen*, 9 Cal.4th 300, 36 Cal.Rptr.2d 609, 885 P.2d 1022 (1994). The supreme court explained that in deciding whether a felony is inherently dangerous, California courts "look to the elements of the felony *in the abstract*, 'not in the "particular" facts of the case,' i.e., not to the defendant's specific conduct." *Id.* at 309, 36 Cal.Rptr.2d 609, 885 P.2d 1022 (citations omitted) (emphasis in original). *See also People v. Robertson*, 34 Cal.4th 156, 166, 17 Cal. Rptr.3d 604, 95 P.3d 872 (2004) ("A felony is considered inherently dangerous to human life when the felony, viewed in the abstract, 'by its very nature ... cannot be committed without creating a substantial risk that someone will be killed.'") (citations omitted). The test to determine whether a violation is inherently dangerous is whether "by its very nature, ... [it] cannot be committed without creating a substantial risk that someone will be killed." *Id.* Accordingly, we reject Romero's contention that we must inspect the particular circumstances of his case.

"The beginning point for a *Bouie* analysis is the statutory language at issue, its legislative history, and judicial constructions of the statute." *Webster v. Woodford*, 369 F.3d 1062, 1069 (9th Cir.2004). The statutory language at issue in § 246.3 is clear. The statute does not purport to punish all discharges of a gun, only those grossly negligent discharges in which someone could be injured or killed. The legislative history of the statute also fails to aid Romero. Although § 246.3 was originally designed to deal with the use of firearms as a means of celebration in urban areas and to combat drive-by shootings, *People v. Alonzo*, 13 Cal.App.4th 535, 539, 16 Cal.Rptr.2d 656 (Cal.Ct.App.1993), it was also intended to supplement existing law relating to criminal liability for the discharge of a firearm in general. *Id.*

Additionally, in 1994, one year prior to Romero's conduct, the California Supreme Court held that a defendant was liable under § 246 for the grossly negligent discharge of a weapon in the direction of a dwelling whether or not someone was in

the dwelling, and whether or not the defendant thought the dwelling was vacant. *Hansen,* 9 Cal.4th at 310–11, 36 Cal. Rptr.2d 609, 885 P.2d 1022. Thus, it is not surprising that the inherently dangerous felony doctrine would be applied to a violation of § 246.3, as a California Court of Appeal ruled in 2000. *People v. Clem,* 78 Cal.App.4th 346, 354, 92 Cal.Rptr.2d 727 (Cal.Ct.App.2000). Because Romero concedes that *Clem* is good law and does not point to any changes in California law that made the *Clem* decision more foreseeable, we cannot conclude that the California Court of Appeal acted objectively unreasonably in determining it foreseeable that a violation of § 246.3 would constitute an inherently dangerous felony.

## II.

 Romero's "merger" argument also fails. Romero is unable to present any California authority for the proposition that it was unforeseeable in 1995 that the "merger" doctrine would not apply to violations of § 246.3. Reviewing this issue, the court of appeal concluded that, on the basis of the California Supreme Court's decision in *Hansen* and other case law discussing the "merger" doctrine, the doctrine did not apply to violations of § 246.3. Similarly, in *People v. Robertson,* the California Supreme Court, after substantial discussion of the "merger" doctrine as applied to § 246.3, arrived at the same conclusion. *Robertson,* 34 Cal.4th at 169–73, 17 Cal. Rptr.3d 604, 95 P.3d 872. The only case that Romero provides for the proposition that the "merger" doctrine applies is the state court of appeal's decision in *People v. Robertson,* 109 Cal.App.4th 1740, 1 Cal. Rptr.3d 353 (2003). That case, however, was decided well after Romero's criminal conduct occurred and the decision was subsequently overruled by the California Supreme Court. *Robertson,* 34 Cal.4th at 169–73, 17 Cal.Rptr.3d 604, 95 P.3d 872. *Robertson* held that the "merger" doctrine

is very narrow, and that applying it to § 246.3 would undermine the deterrent purposes of the felony-murder rule. *Id.* Apart from the now overruled *Robertson,* Romero offers no reason why we should hold that it was objectively unreasonable for the court of appeal to reject his "merger" doctrine argument.

## III.

The California Court of Appeal reasonably determined that Romero had fair notice in 1995 that a violation of § 246.3 was an inherently dangerous felony that did not merge with California Penal Code § 12022.5(a) and could properly serve as a predicate for a charge of second degree felony murder. Accordingly, the state court decision affirming Romero's conviction of second degree felony murder was not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

**AFFIRMED.**