Filed 5/6/16  P. v. Cox CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C079266 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F04909) |
| v. | |
| MICHAEL JOSEPH COX, | |
| Defendant and Appellant. | |

Defendant Michael Joseph Cox entered a negotiated plea of no contest to negligent discharge of a firearm (Pen. Code, § 246.3[1]) in exchange for no state prison at the outset and 150 days in county jail as a condition of probation.  Prior to sentencing, defendant requested that the court reduce the offense to a misdemeanor pursuant to section 17, subdivision (b).  At the hearing scheduled for sentencing and defendant's motion, the court denied the motion, suspended imposition of sentence, and granted probation for a term of five years with various conditions, including 150 days in county jail.

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of the charged offense.

The trial court granted defendant's request for a certificate of probable cause. (§ 1237.5.)

Defendant contends the trial court abused its discretion in refusing to reduce the offense to a misdemeanor. In the alternative, he requests that this court remand to the trial court for reconsideration.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On July 7, 2014, at 8:55 p.m., an officer responded to a call of shots fired and contacted defendant who claimed he had fired gunshots so the police would respond. Defendant appeared to be intoxicated and was belligerent and yelling. In defendant's front yard, the officer found a double-barrel shotgun containing two expended shells.

Defendant told the officer he had observed two boys climb over a nearby fence and confronted them about stealing. They admitted having done so and defendant became angry. One boy pulled out a knife and defendant grabbed the boy's arm in self-defense. The boy threw the knife to the other boy who defendant grabbed as well. Both boys left. About 10 minutes later, five men arrived in one or more cars, got out, and stood on defendant's sidewalk, wanting to fight defendant. Defendant did not believe they would fight fairly so he went into his house to get his shotgun. When he went back outside, the men were driving away. Defendant fired two shots into the air when the men were about a block away.

According to one of the boys, he and his friend were walking past defendant who accused them of stealing. The boy sarcastically responded and defendant grabbed the boy's friend, saying he was going to "kick his ass." The boy warned defendant not to "mess[] with his friend" and defendant punched the boy in the face and kicked him in the

---

**2** We take the facts underlying the offense from the probation report, which described the incident by summarizing the police report.

stomach. The boy and his friend yelled for onlookers to call 911 and then ran home. According to the boy's cousin, the boy arrived home, crying. The family went to defendant's house and defendant threatened to call the police and to " 'kill' " them if they returned. The cousin heard a gunshot as they started for home.

The probation report noted defendant's admitted problem with alcohol. Defendant lived with his girlfriend and provided care for his 87-year-old mother.

In his motion to reduce the felony to a misdemeanor, defendant claimed that when the five men arrived, they threatened defendant and defendant called for emergency assistance but law enforcement did not respond. Defendant claimed he fired warning shots towards the empty lot located across the street and that no one was in danger. Defendant claimed the circumstances of the offense were unusual and included great provocation and that his conduct was partially excusable due to coercion or duress and that he exercised caution to avoid harm, noting no one was injured or suffered a monetary loss. Defendant's prior performance on misdemeanor grants of probation was satisfactory. Other than two misdemeanor convictions, defendant claimed he had led a crime-free life and was willing to comply with probation. Defendant's neighbors appreciated defendant's help in watching the neighborhood.

The prosecutor argued defendant's conduct was "extremely dangerous," having fired his gun either at an occupied house across the street or into the air with people around while he was "highly intoxicated." The prosecutor noted that the incident began when defendant confronted two boys who defendant had accused of stealing and assaulted them.

Defense counsel argued defendant's intoxication was speculative and had defendant actually assaulted the boys, he would have been charged with the offense.

Although the court believed it was a "close case," the court denied defendant's section 17, subdivision (b), motion. In exercising its discretion, the court cited *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968 (*Alvarez*). The court expressly noted that

3

defendant had a minimal criminal history, having been convicted in 2004 of a misdemeanor and in 2000 of resisting arrest and satisfactorily performed on probation. Nevertheless, the court refused to grant relief, determining that the circumstances of the offense and public safety were paramount. The court noted that defendant started the incident by confronting the juveniles and later fired into the air with people around. The probation department opined that defendant is a high risk to reoffend and a high risk for alcohol and drug problems, noting the arresting officer suspected defendant was under the influence when he fired the gun. The court stated, "Given that the crime involved the use of a firearm while the defendant appeared to be intoxicated, the Court is concerned about the risk to public safety that the defendant may pose." Regarding the letters from defendant's neighbors, the court stated, "[T]he Court does not find that those letters give it any comfort. In fact, the Court believes that this whole incident started because [defendant] took it upon himself to police the neighborhood when it surely is not his place to do so. [¶] So I will tell you that the neighbors' letters do not provide any comfort whatsoever to the Court."

## DISCUSSION

Defendant contends the trial court "unfairly used the positive comments of five of [defendant's] neighbors, who said that [defendant] had helped them, against him, turning [defendant's] concern for the safety of his neighborhood into something bad: that [defendant] was some kind of out-of-control neighborhood watch guy, presumably like George Zimmerman, the neighborhood watch volunteer who shot and killed Trayvon Martin, whom he had targeted for alleged suspicious activities." Defendant also argues that the court failed to properly consider the relevant factors. He reiterates his claims made in the trial court: no one was in danger when he fired the two warning shots as the men were driving away; there was no monetary loss; no one was harmed "even if it is true that [defendant] laid his hands on the boys"; at age 51, he had no felony convictions,

4

only two misdemeanors; he would comply with probation; and the objectives of sentencing would be fulfilled by a reduction to a misdemeanor.

Section 17, subdivision (b), provides, in pertinent part: "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] . . . [¶] (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."

Negligent discharge of a firearm is a "wobbler" offense.[3] The sentencing court exercises its discretion whether to reduce a felony conviction for a wobbler offense to a misdemeanor. (*Alvarez, supra*, 14 Cal.4th at p. 977.) "The governing canons are well established: 'This discretion . . . is neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. [Citations.]' [Citation.] 'Obviously the term is a broad and elastic one [citation] which we have equated with "the sound judgment of the court, to be exercised according to the rules of law." [Citation.]' [Citation.] Thus, '[t]he courts have never ascribed to judicial discretion a potential without restraint.' [Citation.] 'Discretion is compatible only with decisions "controlled by sound principles of law, . . . free from partiality, not swayed by sympathy or warped by prejudice . . . ." [Citation.]' [Citation.]

---

[3] Section 246.3, subdivision (a), provides: "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner *which could result in injury or death to a person* is guilty of a public offense and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170." (Italics added.)

'[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' " (*Ibid.*)

The burden is on defendant to demonstrate that the sentencing court abused its discretion in denying his motion to reduce the offense to a misdemeanor by showing the sentencing decision was irrational or arbitrary. (*Alvarez, supra*, 14 Cal.4th at p. 977.) " 'In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " (*Id.* at pp. 977-978.)

In exercising its discretion under section 17, subdivision (b), the trial court considers certain relevant factors including " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial[,]' . . . the general objectives of sentencing[,] . . . and the public interest . . . ." (*Alvarez, supra*, 14 Cal.4th at p. 978.) The general objectives of sentencing include protection of society, punishing defendant, encouraging defendant and others to live a crime-free life, preventing defendant from committing additional crimes, securing victim restitution, and achieving uniformity in sentencing. (Cal. Rules of Court, rule 4.410.)

Applying this deferential standard, we conclude the sentencing court did not abuse its discretion. The record reflects that the sentencing court considered relevant factors including defendant's minimal criminal history and his prior satisfactory performance on probation. The court was well within its discretion to disagree with defendant's representation that no one was in danger when he discharged his firearm.

As defendant notes, section 246.3, negligent discharge of a firearm was enacted as a deterrent to the practice of discharging firearms into the air during festive occasions,

6

such as New Year's and the Fourth of July. (*People v. Alonzo* (1993) 13 Cal.App.4th 535, 539.) The incident here was not part of a festive occasion; nor was it a holiday. Defendant's conduct was much more aggravated than the conduct the law was intended to deter. Defendant, who was apparently intoxicated, fired two blasts from a shotgun in an inhabited residential neighborhood with people around at 8:55 p.m. Defendant concedes in his appellate briefing that he "had an alcohol problem that led him to use bad judgment that day." Even if defendant fired into the air, what goes up must come down and his conduct created the possibility of "responsive gunfire." (*Id.* at p. 540.)

We disagree with defendant's characterization of the court's concern about his monitoring criminal behavior in the neighborhood. Defendant speculates that the court considered him to be an "out-of-control neighborhood watch guy, presumably like George Zimmerman . . . ." In our view, the court aptly concluded that it was not defendant's place to catch suspected thieves but rather that is the responsibility of the police. As the court noted, defendant started the incident by confronting the juveniles. The court also considered defendant to be a high risk to reoffend and a high risk for alcohol and drug problems as reported by the probation officer.

We also disagree with defendant's claim that the trial court failed to consider all relevant factors. The court cited *Alvarez* in making its ruling. It was certainly aware of the factors to consider. That the court did not recite and discuss each and every factor does not equate to the affirmative showing that defendant must make to demonstrate an abuse of discretion. Indeed, the trial court is not required to verbally recite each relevant factor. Rather, the court is deemed to have considered all relevant sentencing factors and presumed to have acted to achieve legitimate sentencing objectives absent an affirmative showing otherwise. (Cal. Rules of Court, rule 4.409; *Alvarez, supra*, 14 Cal.4th at pp. 978-979.) Defendant has failed to demonstrate that the sentencing court, which found this to be a "close case," abused its discretion in denying his motion to reduce the offense to a misdemeanor.

**DISPOSITION**

The judgment is affirmed.

                                         _____MURRAY_____, J.

We concur:

_____NICHOLSON_____, Acting P. J.

_____MAURO_____, J.

8