Filed 11/12/21  P. v. Crawford CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Modoc)

----

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br> v.<br><br>CAMERON ALAN CRAWFORD,<br><br>  Defendant and Appellant. | C091827<br><br>(Super. Ct. No. F-19-307) |
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br> v.<br><br>CAMERON ALAN CRAWFORD,<br><br>  Defendant and Appellant. | C091829<br><br>(Super. Ct. No. F-19-467) |

1

While in a wooded area with a friend late at night, a few hours after smoking methamphetamine, defendant Cameron Alan Crawford fired a shotgun at what he believed to be a mountain lion. There was no mountain lion. Pellets from the shotgun blast hit his friend's girlfriend, L., in both legs. Their dog, the creature defendant mistook for the mountain lion, was also hit in the tail. L. and the dog had remained in his friend's truck while they went out into the woods, and defendant believed they remained there when he fired the shotgun.

These basic facts supported criminal charges in Case No. F-19-467 and a violation of probation previously granted in case No. F-19-307.[1] Defendant was convicted by jury of felony discharge of a firearm with gross negligence and misdemeanor battery.[2] After the jury returned its verdict, the trial court found this criminal conduct also violated the terms of defendant's grant of probation in case No. F-19-307. That grant of probation was revoked and the trial court imposed 90 days in the Modoc County Jail for the offenses in that case. With respect to case No. F-19-467, the trial court suspended imposition of sentence and placed defendant on formal probation for a period of three years. Defendant appeals in both cases. We consolidated the appeals for purposes of argument and decision.

Defendant contends: (1) the evidence is insufficient to support either of his convictions; (2) the prosecutor engaged in prejudicial prosecutorial misconduct by

---

[1] In case No. F-19-307, defendant was placed on summary probation for three years for carrying a loaded firearm in public, possession of a firearm with identification numbers removed, and possession of narcotics paraphernalia.

[2] The jury acquitted defendant of felony assault with a firearm, felony battery causing serious bodily injury, and misdemeanor use of a controlled substance. With respect to defendant's misdemeanor battery conviction, the jury also found he personally used a firearm during the commission of the offense within the meaning of Penal Code section 12022.5; however, that enhancement provision applies only to felony convictions.

misstating the law and arguing facts not in evidence during closing argument; (3) Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950) (Stats. 2020, ch. 328, § 2) applies retroactively to defendant's case and requires reduction of his probation term to two years; and (4) defendant is entitled to 10 additional days of custody credit.

We must reverse defendant's battery conviction because the record contains no evidence that defendant knew L. was in the immediate vicinity or otherwise in the line of fire when he fired the shotgun. The evidence is therefore insufficient to support a conclusion that a reasonable person with defendant's knowledge of the facts would have known firing the shotgun would directly, naturally, and probably result in a battery upon L. Defendant's conviction for grossly negligent discharge of a firearm, however, is adequately supported by substantial evidence. Defendant's assertion of prosecutorial misconduct is forfeited. The Attorney General concedes defendant's final two contentions. We accept these concessions and order the appropriate modifications to the order granting defendant probation in case No. F-19-467 and the order committing defendant to jail in case No. F-19-307. As so modified, we affirm.

FACTS

The relevant facts are largely undisputed and may be stated briefly. On December 8, 2019, about 3:00 a.m., defendant entered a forested area of Modoc County with a friend, Rex Kunert, seeking to cut down a tree for firewood. Defendant smoked methamphetamine a few hours before he and Kunert headed out to the woods in separate trucks. Defendant brought a shotgun in case they encountered a mountain lion. Kunert's girlfriend, L., accompanied them, but remained in Kunert's truck with their dog, Aurora. L. was asleep in the truck when defendant and Kunert walked into the woods together.

Fifteen to twenty minutes later, about 30 feet from where they parked, defendant heard what sounded like a limb breaking. Kunert called out for L. to see if the sound came from her, but she did not respond. Defendant then saw a tail emerge from behind a

3

tree and fired the shotgun believing he was firing at a mountain lion. The tail belonged to Aurora. Unbeknownst to either defendant or Kunert, L. and the dog had left the truck at some point and also went into the woods. L. was hit in both legs with shotgun pellets. Aurora's tail was also hit. Realizing his mistake, defendant took off his belt, fashioned a tourniquet, and drove L. to the hospital.

DISCUSSION

I

*Sufficiency of the Evidence*

Defendant contends the evidence is insufficient to support either of his convictions. We agree with respect to defendant's conviction for battery. Defendant's conviction for grossly negligent discharge of a firearm, however, is adequately supported by substantial evidence.

A.

*Standard of Review*

The standard of review is well-settled: "When reviewing a challenge to the sufficiency of the evidence, we ask ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for ' "substantial evidence—that is, evidence which is reasonable, credible, and of solid value" ' that would support a finding beyond a reasonable doubt. [Citation.]" (*People v. Banks* (2015) 61 Cal.4th 788, 804.)

" 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for

4

insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

With this standard of review in mind, we shall now assess the sufficiency of the evidence supporting each of defendant's convictions in this case.

## B.

### *Battery*

"A battery is any willful and unlawful use of force or violence upon the person of another." (Pen. Code, § 242.)[3]

"The mental state required for battery is the same as that required for assault." (*People v. Hayes* (2006) 142 Cal.App.4th 175, 180 (*Hayes*).) This mental state " 'is established upon proof the defendant willfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery.' " (*People v. Williams* (2001) 26 Cal.4th 779, 782 (*Williams*).) The defendant need not intend the battery to occur. (*Id*. at p. 786.) Nor is it required that the defendant be "subjectively aware of the risk that a battery might occur." (*Id*. at p. 788, fn. omitted.) However, the defendant "must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his [or her] conduct." (*Ibid*.)

*Hayes*, *supra*, 142 Cal.App.4th 175, provides a useful example. There, while resisting arrest for a probation violation, the defendant kicked a large concrete ashtray that was next to one of the arresting officers. The ashtray toppled over and injured that officer's shin. (*Id*. at p. 179.) Concluding the evidence was sufficient to support the defendant's battery conviction, the appellate court explained: "A reasonable trier of fact could find beyond a reasonable doubt that appellant intentionally kicked the ashtray with

---

[3]     Further undesignated statutory references are to the Penal Code.

5

great force knowing that [the officer] was standing beside the ashtray. Based on these findings, a reasonable trier of fact could further find beyond a reasonable doubt that appellant knew facts sufficient to establish that his intentional act 'would directly, naturally and probably result in a battery' by causing the ashtray to fall on [the officer]. [Citation.] Appellant concedes that he intentionally kicked the ashtray with the purpose of knocking it over. It is of no consequence whether he may have honestly believed that his intentional act was unlikely to result in a battery. [Citation.]" (*Id*. at p. 180.)

Distinguishing the facts of this case from those present in *Hayes*, defendant argues there was no evidence that he knew L. was in the immediate vicinity when he fired the shotgun. We agree this fact is dispositive. Defendant acknowledges he intentionally committed an act, i.e., fired a shotgun, that resulted in injury to L. He need not have intended an injury to result in order to be convicted of battery. Nor must he have been subjectively aware of the risk of injury. However, in order to be convicted of battery, he must have been aware of facts that would lead a reasonable person to conclude a battery would directly, naturally, and probably result from firing the shotgun. Defendant believed L. was inside Kunert's truck 30 feet away when he pulled the trigger. It was of course possible that she and the dog got out of the truck during the 15 to 20 minutes defendant was in the woods with Kunert. Indeed, Kunert apparently realized this possibility because he called out L.'s name when they heard what sounded like a limb breaking. L. did not respond. Defendant then saw a tail appear from behind a tree and fired the shotgun at what he believed to be a mountain lion. As we explain in greater detail below, a reasonable jury could have concluded defendant acted recklessly and with gross negligence when he fired, but " ' "[r]eckless conduct alone does not constitute a sufficient basis for assault or for battery even if the assault results in an injury to another." ' [Citations.]" (*Williams*, *supra*, 26 Cal.4th at p. 785.)

Stated simply, without knowledge that L. was either in the immediate vicinity or otherwise in the line of fire, a reasonable person in defendant's position would not have

6

concluded a battery would directly, naturally, and probably result from his act of firing the shotgun.

Our Supreme Court's decision in *Williams*, *supra*, 26 Cal.4th 779, provides further support for this conclusion. There, the defendant fired a shotgun at the victim's truck, hitting "the rear passenger-side wheel well," while the victim "crouched approximately a foot and a half away from the rear fender." (*Id*. at pp. 782-783.) The victim's sons were also near the truck, but defendant denied knowing they were there until after he fired. (*Id*. at p. 783.) Charged with three counts of assault with a firearm, the jury convicted defendant of one count and deadlocked on the other two counts. (*Ibid*.) The Court of Appeal reversed for instructional error. Our Supreme Court reversed that judgment. Although the court agreed with the Court of Appeal's conclusion that the assault instruction was erroneous because it would have permitted the jury to convict the defendant of assault "even if he did not actually know the facts sufficient to establish that his act by its nature would probably and directly result in a battery," the court nevertheless found the error was harmless beyond a reasonable doubt because the jury found the defendant guilty of assault where he admitted to firing a shotgun at the victim's truck "even though he knew that [the victim] was in the near vicinity." (*Id*. at p. 790.) Thus, the court explained, "defendant undoubtedly knew those facts establishing that his act by its nature would directly, naturally and probably result in a battery," and any properly instructed jury would have so found. (*Ibid*.) The court also noted the jury's deadlock on the two additional counts of assault, where the defendant "denied actual knowledge that [the victim's sons] were near the truck when he fired his shotgun, further confirms that the jury was not misled." (*Ibid*.)

Here, like the two deadlocked counts in *Williams*, defendant denied knowing L. was nearby when he fired his shotgun at what he believed to be a mountain lion. While the *Williams* court had no occasion to decide whether or not the two assault counts involving the victim's sons would have been supported by substantial evidence had the

7

jury convicted that defendant of those counts, the court's reasoning makes abundantly clear that had the jury believed that defendant did not know those alleged victims were nearby, or had reasonable doubt about defendant's knowledge of their presence near the truck, an acquittal of those counts was warranted.

Nevertheless, the Attorney General argues the jury could reasonably have concluded defendant knew L. was there when he fired, pointing to evidence that defendant was not "strongly intoxicated" by the methamphetamine he smoked earlier in the night. The Attorney General also points out that the jury saw photographs of the scene of the shooting and that defendant, when law enforcement brought him out to that scene, described L.'s location at the time he shot her with the shotgun. We certainly agree the methamphetamine defendant smoked earlier in the night did not prevent him from having the presence of mind to fashion a tourniquet and drive L. to the hospital, but this does not mean he was able to see she was there when he fired the shotgun. Nor does the fact that defendant knew the location where she was shot. Of course he knew that location. After defendant fired the shotgun, L. screamed out in pain, and defendant immediately realized he had shot her by mistake. This evidence does not in any way undermine defendant's claim that he did not know L. was there *when he fired*.

We conclude there is no substantial evidence in this record which would have allowed the jury to conclude defendant had actual knowledge of L.'s presence when he fired the shotgun. Without such knowledge, a reasonable person in defendant's position would not have concluded a battery would directly, naturally, and probably result from his conduct. We must therefore reverse defendant's battery conviction.

## C.

### *Grossly Negligent Discharge of a Firearm*

Section 246.3 provides in relevant part that "any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense." (§ 246.3, subd. (a).)

8

The elements of this offense are: "(1) the defendant unlawfully discharged a firearm; (2) the defendant did so intentionally; [and] (3) the defendant did so in a grossly negligent manner which could result in the injury or death of a person." (*People v. Alonzo* (1993) 13 Cal.App.4th 535, 538 (*Alonzo*).) The propriety of defendant's conviction of this crime turns on the third element.

In *People v. Ramirez* (2009) 45 Cal.4th 980 (*Ramirez*), our Supreme Court explained that in enacting section 246.3, "the Legislature intended no requirement that an actual person be in proximity to the grossly negligent shooting. The risk element of section 246.3 was included to ensure that the statute would not apply to hunting or target practice in remote locations, posing no foreseeable risk of human injury, based on abstract theories of criminal negligence. The risk element requires the likely presence of people in the area, not the actual presence of a specific person. Requiring the prosecution to prove a particular person was present is impractical and was never intended." (*Id*. at pp. 986-987.)

The court reached this conclusion in part because the statute was enacted "in response to the phenomenon of celebratory gunfire" in populated areas such as Los Angeles, where innocent people have been injured or killed by falling bullets after those bullets were fired into the air on holidays such as New Year's Eve and the Fourth of July. (*Ramirez*, *supra*, 45 Cal.4th at pp. 987-988.) As the court explained, multiple amendments were made prior to final enactment, the first limiting the scope of the statute to certain cities and to circumstances likely to injure or kill another person, and subsequent amendments expanding the statute's scope beyond cities and requiring negligence, in the case of one amendment, and gross negligence, in the case of later amendments. (*Id*. at p. 988.) Amendments restricting the statute's scope and heightening the required mental state for conviction "were 'spurred by gun and defense advocates who were concerned that the statute might ensnare hunters or citizens engaged in target practice.'" (*Ibid*.) As finally enacted, the statute prohibits "willful shooting 'in a grossly

9

negligent manner which could result in injury or death to a person.' " (*Id*. at p. 989.) Based on this legislative history, the court concluded the statute requires both a "grossly negligent shooting" and a "reasonably foreseeable . . . human injury or death [that] might result" as a consequence. (*Id*. at p. 990.) It does not require any identifiable person to have been in the proximity of the shooting itself or "actually so endangered." (*Ibid*.) Such a requirement would take the very cases prompting passage of the statute, i.e., shooting into the air during holiday celebrations, out of the reach of the statute because "[n]o one knows where shots fired recklessly into the air are likely to land." (*Ibid*.)

Thus, we must determine whether substantial evidence supports a conclusion that defendant fired the shotgun in a grossly negligent manner where injury to a human being was reasonably foreseeable. We answer that question in the affirmative.

"Gross negligence, as a basis for criminal liability, requires a showing that the defendant's act was ' "such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life, or, in other words, a disregard of human life or an indifference to consequences." ' [Citations.]" (*Alonzo*, *supra*, 13 Cal.App.4th at pp. 539-540.) Firing a gun into the air in a commercial or populated area clearly qualifies as a grossly negligent act done in disregard of the reasonably foreseeable possibility of injury or death to a human being. (*Id*. at p. 540; *People v. Torres* (2019) 39 Cal.App.5th 849, 857.) Defendant argues firing a gun in the "wooded areas of Modoc County" does not, "by virtue of the location alone." He is mistaken.

In making this argument, defendant relies on *People v. Clem* (2000) 78 Cal.App.4th 346 (*Clem*), in which the appellate court held violation of section 246.3 is an inherently dangerous felony, supporting second degree felony murder liability where the

10

grossly negligent discharge results in death.[4]  (*Clem,* at p. 351.)  In so concluding, the court explained:  " 'The facts must be such that the fatal consequence of the negligent act could reasonably have been foreseen.'  [Citations.]  Thus, section 246.3 by its terms presumes that there are reasonable grounds to suspect that people will be endangered.  If there are *isolated places in this populous state where the willful discharge of a firearm posed no reasonably foreseeable threat to human life*, then that act in those places would not violate section 246.3."  (*Id.* at p. 352, italics added.)  Defendant relies on the foregoing italicized language to argue wooded areas of Modoc County are precisely the sort of isolated places where one may fire a gun without running afoul of section 246.3.  We do not dispute that is ordinarily the case.

As previously stated, our Supreme Court has held section 246.3 was not intended to "apply to hunting or target practice in remote locations, posing no foreseeable risk of human injury, based on abstract theories of criminal negligence."  (*Ramirez*, *supra*, 45 Cal.4th at p. 987.)  But this does not mean that every shooting that occurs in remote locations is immune from criminal liability under section 246.3.  The important qualifier in the above quotation from *Ramirez* is "posing no foreseeable risk of human injury." (*Ibid*.)  Similarly, the appellate court in *Clem* qualified its statement with "where the willful discharge of a firearm posed no reasonably foreseeable threat to human life." (*Clem*, *supra*, 78 Cal.App.4th at p. 352.)

Here, notwithstanding the remote location, defendant's act of firing the shotgun posed such a risk.  Defendant admitted smoking methamphetamine a few hours before

---

[4]     This holding has been superseded by the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.), effective January 1, 2019, which amended section 188, subdivision (a), to provide in paragraph (3):  "Except [for first degree felony murder liability] as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."

heading out to the woods with Kunert. Although the record does not contain evidence of the amount he ingested, or the precise effect the substance would have had on defendant at the time of the shooting, it has become common knowledge that use of the substance causes hyperactivity, nervousness, and agitation. (See, generally, *People v. Yeoman* (2003) 31 Cal.4th 93, 162 ["The effect of drugs, while certainly a proper subject of expert testimony, has become a subject of common knowledge among laypersons."].) Defendant and Kunert did not go out to the woods to hunt or shoot at targets in the middle of the day. They went out there at 3:00 a.m. and defendant brought the shotgun in case they encountered a mountain lion. They also brought L. and Aurora, who initially remained in Kunert's truck. It was 15 to 20 minutes later, and only about 30 feet from the trucks, that defendant fired the shotgun at what he believed to be a mountain lion. At some point during those 15 to 20 minutes, L. and Aurora got out of Kunert's truck and also went into the woods. Although defendant did not know L. was in the woods when he pulled the trigger, it was certainly reasonably foreseeable that she might have left the truck with Aurora and been in harm's way when defendant fired the shotgun at the sight of a tail emerging from behind a tree.

We conclude the evidence supports a reasonable conclusion that defendant's willful discharge of the shotgun posed a reasonably foreseeable risk of human injury or death, and his act of firing the weapon amounted to such a departure from what would be the conduct of an ordinarily prudent person as to be incompatible with a proper regard for human life.

## II

### *Prosecutorial Misconduct*

Defendant also claims the prosecutor engaged in prejudicial prosecutorial misconduct by misstating the law and arguing facts not in evidence during closing argument. There is no need to provide a detailed summary of the conduct defendant now claims amounted to prosecutorial misconduct. It will suffice to note the prosecutor

12

argued during closing argument and during the rebuttal argument that defendant's methamphetamine use was unreasonable, that his use of the substance made him paranoid about seeing mountain lions, and that he unreasonably fired the shotgun because of that paranoia. Defense counsel did not object to this line of argument. The prosecutor also described the required mental state for assault, battery, and grossly negligent discharge of a firearm. Defense counsel did not object to the prosecutor's description of the law.

Generally, "[t]o preserve a misconduct claim for review on appeal, a defendant must make a timely objection and ask the trial court to admonish the jury to disregard the prosecutor's improper remarks or conduct, unless an admonition would not have cured the harm." (*People v. Davis* (2009) 46 Cal.4th 539, 612; *People v. Gamache* (2010) 48 Cal.4th 347, 370-371.)

Defendant acknowledges his trial counsel failed to object, but argues "[t]he argument should nevertheless be reviewed by this court because the case is closely balanced and the misconduct contributed to the verdict." In support of this exception to forfeiture, defendant cites *People v. Lambert* (1975) 52 Cal.App.3d 905. The court in that case, however, neither discussed this exception nor concluded it applied. Instead, it simply cited *People v. Perry* (1972) 7 Cal.3d 756, for the existence of the exception, which in turn cited *People v. Berryman* (1936) 6 Cal.2d 331. (*Lambert*, at p. 908.) These cases were overruled on this point in *People v. Green* (1980) 27 Cal.3d 1, in which our Supreme Court held the foregoing purported exception "is not properly an exception to the objection requirement." (*Id*. at p. 28, overruled on a different point in *People v. Martinez* (1999) 20 Cal.4th 225, overruled on another point in *People v. Fontenot* (2019) 8 Cal.5th 57; see also *People v. Ledesma* (1987) 43 Cal.3d 171, 241 (conc. opn. of Mosk, J.).)

Futility is a proper exception to the objection requirement. "A defendant will be excused from the requirement of making a timely objection and/or a request for admonition if either would have been futile. [Citation.]" (*People v. Cole* (2004) 33

13

Cal.4th 1158, 1201.)  Defendant argues the trial court's ruling denying his motion to dismiss the assault with a firearm (count one) and battery causing serious bodily injury (count two) counts rendered futile any objection to the prosecutor's argument concerning the reasonableness of his conduct.  We disagree.  But in any event, the jury acquitted defendant of those counts, convicting him of simple battery as a lesser included offense to count two, and we are reversing that misdemeanor conviction for insufficient evidence.  Thus, defendant cannot have been harmed by the claimed misconduct unless it contributed to his conviction of grossly negligent discharge of a firearm.  Defendant does not adequately explain how the trial court's ruling denying his motion to dismiss the assault and battery counts rendered futile any objection he had to the prosecutor's argument regarding the grossly negligent discharge count.

The contention is therefore forfeited.  Any alternative claim of ineffective assistance of counsel is also forfeited for failure to raise that alternative claim on appeal.  (See *People v. Clayburg* (2012) 211 Cal.App.4th 86, 93 [failure to raise claim in opening brief on appeal forfeits the claim].)  We therefore do not address the merits of defendant's prosecutorial misconduct claim under the rubric of ineffective assistance of counsel.

### III

### *Assembly Bill 1950*

Defendant further asserts, and the Attorney General concedes, that Assembly Bill 1950 applies retroactively to defendant's case and requires reduction of his probation term to two years.  We accept the concession.

Assembly Bill 1950 took effect on January 1, 2021, while this appeal was pending.  (Stats. 2020, ch. 328, § 2.)  This enactment reduced the maximum probation term for most felony offenses to two years.  (§ 1203.1, subds. (a), (m).)  Because the reduction in the length of the probation term has an ameliorative effect, we presume that our Legislature intended to make its effect retroactive to nonfinal convictions in the absence of an express provision specifying a contrary intent.  (*In re Estrada* (1965) 63 Cal.2d 740,

14

744-747.) Assembly Bill 1950 contains no such provision. Accordingly, the maximum term of defendant's probation is now two years. (Accord, *People v. Sims* (2021) 59 Cal.App.5th 943, 955-964; *People v. Quinn* (2021) 59 Cal.App.5th 874, 879-885.) We must therefore reduce the probation term from three years to two years and direct the trial court to modify the minute order governing the length and terms of probation to reflect a two-year term. Should either the People or defendant wish to make further motions regarding the length or terms of probation, each may file the appropriate motion(s) with the trial court.

## IV

### *Custody Credit*

Finally, defendant contends he is entitled to 10 additional days of custody credit in case No. F-19-307. The Attorney General concedes this point as well. We again accept the concession and shall order the appropriate modification to the order committing defendant to jail in case No. F-19-307.

## DISPOSITION

Defendant's battery conviction in case No. F-19-467 is reversed and the term of probation is reduced from three years to two years. In all other respects, the judgment entered in that case is affirmed. The trial court is directed to prepare a new order granting formal probation removing reference to the reversed battery count and also reflecting imposition of a two-year term of formal probation; the trial court shall further notify the Modoc County Department of Probation of the change to defendant's probationary term. The judgment entered in case No. F-19-307 is modified to grant defendant 10 additional days of custody credit and affirmed as modified. The trial court is directed to modify the

15

March 10, 2020, order committing defendant to jail to reflect an award of 48 days of conduct credit.

/s/
HOCH, J.

We concur:

/s/
RAYE, P. J.

/s/
KRAUSE, J.

16